UNITED STATES of America, ex rel.
Cornelius E. HARRIS, Plaintiff,

v.

Dr. Peter BERNAD and Neurology
Services, Inc., Defendants.

Civil Action No. 99–3384 (RMU).

United States District Court,
District of Columbia.

Aug. 5, 2003.

Mark D. Polston, Washington, DC, for plaintiff.

Ronald Henry Clark, Arent, Fox, Kintner, Plotkin & Kahn, Washington, DC, for defendant.

Rudolph Contreras, Washington, DC, for Non Party.

*MEMORANDUM OPINION*

DENYING THE DEFENDANTS'
MOTION TO DISMISS

URBINA, District Judge.

## I. INTRODUCTION

The plaintiff, the United States ("the government"), brings this action, under the *qui tam* provision of the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, against Dr. Peter Bernad and Neurology Services,

Inc. (collectively, "the defendants"). The government alleges that the defendants knowingly submitted fraudulent claims or used fraudulent records to create claims for payment through various federal health insurance programs, including Medicare. The government also charges common-law claims of fraud, unjust enrichment and mistake of fact. This matter is before the court on the defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). Because the government alleges fraud with sufficient particularity and properly states a claim, the court denies the defendants' motion to dismiss.

## II. BACKGROUND

Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, established the Health Insurance for Aged and Disabled program, commonly known as Medicare.[1] First Am. Compl. ("Compl.") ¶ 7. The program consists of two parts: Part A provides insurance for the costs of hospitalization and post-hospitalization, and Part B—which is at issue here—covers a percentage of the fees for physician and laboratory services. *Id.* ¶ 8 (*citing* 42 U.S.C. § 1395c-i, k-l, xx). The Department of Health and Human Services ("HHS"), through the Health Care Financing Administration[2] ("HCFA"), administers and reimburses doctors' claims filed under Part B. *Id.*

Doctors submit claims to HCFA for reimbursement on the HCFA 1500 claim form. *Id.* ¶ 16. The HCFA 1500 requires the doctor to describe the services provided to the patient using standardized numeric codes ("CPT codes"). *Id.* ¶ 17. The

---

1. While the government focuses on Medicare, it also reserves the ability to amend its complaint if it discovers fraud on any other governmental institutions' medical insurance plans. Compl. ¶¶ 13–15.

2. HCFA changed its name to the Centers for Medicare and Medicaid Services after the initiation of this suit. *Id.* ¶ 7.

defendants provide medical services known as evaluation and management services ("E/M services"). *Id.* ¶ 18. The CPT codes for E/M services range from Level I (for the least complicated services for cases of low severity) to Level V (for complex services for cases of high severity). *Id.* The Medicare program reimburses the higher levels of E/M services at a significantly higher rate. *Id.*

The government alleges that the defendants engaged in "upcoding"—that is, submitted claims with CPT codes that represented a level of care higher than the defendants actually provided. *Id.* ¶ 21. Specifically, the government asserts that for the past six years, the defendants upcoded almost every claim to Levels IV and V when the actual level of service they provided was much lower. *Id.* According to several former Neurology Services employees, one method the defendants allegedly used to inflate the CPT code on a claim was to provide defendant Neurology Services' treating physicians with fee tickets pre-printed only with the codes for Levels III, IV and V. *Id.* ¶¶ 22, 24. The defendants' treating physicians used the tickets to document the services provided to patients, and the defendants then used the tickets to bill the government. *Id.* Because only the codes for Levels III, IV and V were printed on the fee ticket, physicians who provided Level I or II services had to write in the level of service, rather than simply check a box on the ticket. *Id.* As a result, the government states, physicians rarely documented and billed for Level I or II services. *Id.*

The government notes a large discrepancy in the level of claims that the defendants filed between 1992 and 1998. *Id.* ¶ 23. A review of the defendants' Medicare billings reveals that defendant Dr. Bernad billed 92.68% of his claims at Levels IV and V, and defendant Neurological Services billed 94.32% of its claims at

these inflated levels. *Id.* By comparison, procedures at Levels IV and V account for only 27% of all procedures that other neurologists bill the government for. *Id.*

As additional support, the government points to 12 sample patient cases involving treatment by Dr. Bernad. *Id.* ¶ 25. A review of these claims found that the vast majority of the claims Dr. Bernad submitted did not correspond with the treatment that he administered and documented. *Id.* For example, Dr. Bernad repeatedly billed claims at Level IV or V when the treatment was a simple follow-up visit from a patient treated a week earlier. *Id.*

Turning to the procedural history of this case, the court notes that the relator, Cornelius Harris, filed the original complaint for this matter on December 21, 1999. The government intervened on January 29, 2002, and filed an amended complaint ("complaint") on March 6, 2002. The complaint alleges violations of the FCA, common law fraud, unjust enrichment, and payment under mistake of fact. *Id.* ¶¶ 31–54. In response, the defendants filed a motion to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and a failure to follow the heightened pleading requirements for fraud claims pursuant to Federal Rule of Civil Procedure 9(b). Mot. to Dismiss at 1. The court now turns to the substance of the defendants' motion.

## III. ANALYSIS

### A. The Court Denies the Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6)

The defendants argue that the government's complaint fails to state a claim on which the court could grant relief. According to the defendants, the complaint does not adequately allege violations of section 3729(a)(2) of the FCA. As to the

FCA claims generally, the defendants contend that the claims fail because they are based on differences in opinion and failure to follow administrative procedures. The court disagrees and views the government's complaint as properly pleaded to state a claim under Rule 12(b)(6).

### 1. Legal Standard for Rule 12(b)(6)

■ For a complaint to survive a Rule 12(b)(6) motion to dismiss, it need only provide a short and plain statement of the claim and the grounds on which it rests. FED.R.CIV.P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A motion to dismiss under Rule 12(b)(6) tests not whether the plaintiff will prevail on the merits, but instead whether the plaintiff has properly stated a claim. FED.R.CIV.P. 12(b)(6); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The plaintiff need not plead the elements of a prima-facie case in the complaint. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–14, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (holding that a plaintiff in an employment-discrimination case need not establish her prima-facie case in the complaint); *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1114 (D.C.Cir.2000). Thus, the court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Atchinson v. District of Columbia*, 73 F.3d 418, 422 (D.C.Cir.1996).

In deciding such a motion, the court must accept all of the complaint's well-pled factual allegations as true and draw all reasonable inferences in the nonmovant's favor. *Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683. The court need not accept as true legal conclusions cast as factual allega-

tions. *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C.Cir.1994). While the court must generally limit its review to facts alleged within the complaint, the court may also consider facts of which judicial notice may be taken and documents that are both referenced in the complaint and central to the plaintiff's claim. *Phillips v. Bureau of Prisons*, 591 F.2d 966, 969 (D.C.Cir.1979); *Lipton v. MCI Worldcom, Inc.*, 135 F.Supp.2d 182, 186 (D.D.C.2001).

### 2. The Government Has Stated A Legitimate Cause of Action Under Section 3729(a)(2)

■ The defendants argue that the court should dismiss Count II of the complaint under Rule 12(b)(6) for failure to state a claim because the complaint does not adequately allege a violation of section 3729(a)(2) of the FCA. Mot. to Dismiss at 13. The defendants aver that the only false records the complaint alleges are the fee tickets that the defendants produced. *Id.* The defendants contend that since they never submitted these fee tickets to the government, a FCA claim under section 3729(a)(2) is invalid. *Id.* The government responds that this case involves both false claims and false records. Opp'n at 26–27. According to the government, its claim for a violation of section 3729(a)(2) is viable because it alleges that the defendants used false records to get the government to pay false claims. *Id.* at 28.

■ Under section 3729(a)(1) of the FCA, a defendant is liable if she "knowingly *presents, or causes to be presented,* to an officer or employee of the United States Government or a member of the Armed Forces of the United States *a false or fraudulent claim for payment or approval.*" 31 U.S.C. § 3729(a) (emphasis added). Under section 3729(a)(2), a defendant is liable if he "knowingly *makes, uses, or causes to be made or used, a false record*

*or statement to get a false or fraudulent claim paid or approved* by the Government." *Id.* Thus, the elements of section 3729(a)(1) are (1) the defendant submitted a claim to the government, (2) the claim was false, and (3) the defendant knew the claim was false. *United States v. Southland Mgmt. Corp.*, 288 F.3d 665, 674–75 (5th Cir.2002), *aff'd en banc*, 326 F.3d 669 (5th Cir.2003). To prove a violation of section 3729(a)(2), a plaintiff must show that (1) the defendant created a record and used this record to get the governmental to pay its claim, (2) the record was false, and (3) the defendants knew the record was false. *Id.*

■ The court determines that, contrary to the defendants' argument, section 3729(a)(2) does not require the defendants to submit the false records to the government to be in violation of the statute. *Southland Mgmt. Corp.*, 288 F.3d at 675. Section 3729(a)(2) requires only that the defendant knowingly created a false record, used this record to create a claim, then submitted the *claim* (not the record) to the government. *Southland Mgmt. Corp.*, 288 F.3d at 675. Because the government does allege that the defendants knowingly created false records, used the false records as the basis for their Medicare claims, and then submitted the claims to the government, the court concludes that Count II states a cognizable claim. *Id.; Hishon*, 467 U.S. at 73, 104 S.Ct. 2229.

■ The defendants also argue that the court should dismiss Count II because one HCFA 1500 claim form cannot constitute a violation of both section 3729(a)(1) and (2). Mot. to Dismiss at 13–14. The government charges violations of section 3729(a)(1) in Count I and violations of section 3729(a)(2) in Count II. Compl. ¶¶ 31–38. This argument fails because although a court can only hold a defendant liable under either section 3729(a)(1) or (a)(2),

Rule 8(e)(2) permits the government to plead both sections in the alternative. Further, the main purpose of section 3729(a)(2) is to remove any defense that the defendants themselves did not submit false claims to the government. J. BOESE, CIVIL FALSE CLAIMS AND QUI TAM ACTIONS 2D § 2.01[B]. Accordingly, the court denies the defendants' motion to dismiss Count II because it presents a viable claim on which the court can grant relief. *Id.; Hishon*, 467 U.S. at 73, 104 S.Ct. 2229.

### 3. The Government's Claims Amount to More Than a Difference of Opinion

■ The defendants argue that the court should dismiss Counts I and II, which allege violations of the FCA, pursuant to Rule 12(b)(6) because the government alleges nothing more than a difference of scientific opinion. Mot. to Dismiss at 12. In particular, the defendants aver that "the complaint alleges nothing more than the governments' unsubstantiated belief that [the defendants employed] inappropriately high levels of billing codes" in the upcoding scheme. *Id.*

The court agrees that mere disagreements over scientific opinion, methodology, and judgments do not amount to claims under the FCA. *Wang v. FMC Corp.*, 975 F.2d 1412, 1420–21 (9th Cir.1992). The government's complaint, however, expresses more than a difference of opinion, it alleges that the defendants submitted false claims to the government. *See generally* Compl. The complaint states that the defendants knowingly upcoded by fraudulently claiming E/M levels of service on the HCFA 1500 form that were higher than the E/M levels of service they actually provided. Compl. ¶ 21. Because upcoding is actionable under the FCA, and because the court must treat the complaint's well-pled factual allegations as true, the gov-

ernment has alleged viable claims. *United States v. Halper*, 490 U.S. 435, 437–38, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989) *overruled on other grounds, Hudson v. United States*, 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997); *United States v. Krizek*, 192 F.3d 1024, 1025–26 (D.C.Cir.1999); J. Boese, Civil False Claims and Qui Tam Actions, § 3.01[A]; *see also Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683.

### 4. The Government's FCA Counts Allege More Than a Mere Failure To Comply With Administrative Regulations

The defendants also argue that Counts I and II fail to state viable claims under Rule 12(b)(6) because paragraphs 10, 12, 16 through 20, and 25 fail to support any legal claim under the FCA. Mot. to Dismiss at 2–4, 10. Rather, the defendants contend, these paragraphs merely allege violations of administrative rules and regulations that are not violations of the FCA. *Id.* at 2. Because the government's allegations of administrative violations in those paragraphs are not the sole basis for its FCA counts, and because the court has already determined that Counts I and II state viable claims, this argument also fails. *Hishon*, 467 U.S. at 73, 104 S.Ct. 2229.

### B. The Court Denies the Defendants' Motion to Dismiss Pursuant to Rule 9(b)

#### 1. Legal Standard for Federal Rule of Civil Procedure 9(b)

■ An FCA complaint must comply with Rule 9(b)'s requirement that circumstances constituting fraud or mistake be stated with particularity. Fed.R.Civ.P. 9(b); *United States ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 551 (D.C.Cir. 2002). The circumstances that must be pled with specificity are matters such as the time, place, and contents of the false representations, since the rule is chiefly concerned with the elements of fraud. *Totten*, 286 F.3d at 551–52.

The particularity requirement, however, does not abrogate the requirements of Rule 8, and it should be harmonized with Rule 8(a) and (e)'s general directives that the pleadings contain a short and plain statement of the claim or defense and that each averment be simple, concise, and direct. Fed.R.Civ.P. 8; *United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1386 (D.C.Cir.1981). Furthermore, a plaintiff need not allege with specificity each element of his cause of action if it contains allegations from which an inference may be drawn that the plaintiff will produce evidence on the essential elements. *United States v. Bouchey*, 860 F.Supp. 890, 893 (D.D.C.1994).

■ In sum, to satisfy the requirements of Rule 9(b), an FCA complaint must set forth an adequate factual basis for the plaintiff's allegations that the defendant submitted false claims (or false statements to get false claims paid), including a more detailed description of the specific falsehoods that are the basis for its suit. *Totten*, 286 F.3d at 551.

#### 2. The Government Alleges Its Complex Fraud Scheme with Sufficient Particularity

■ The defendants argue that the government's complaint does not plead the minimum requirements of Rule 9(b): the time, place, and content of the false representations, and the fraudulently gained benefit. Mot. to Dismiss at 8. The court, however, determines that the government has plead its claims with sufficient particularity and, thus, the complaint complies with Rule 9(b). *Totten*, 286 F.3d at 551–52.

■ In cases where the complaint alleges complex or extensive fraud schemes,

courts often relax the Rule 9(b) standard. *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.,* 238 F.Supp.2d 258, 269 (D.D.C.2002) (stating that the complaint was sufficiently specific given the complexity of the scheme); *Bouchey,* 860 F.Supp. at 893; *United States v. Intrados/Int'l Mgmt. Group,* 265 F.Supp.2d 1, 2–3 (D.D.C. 2002) (same); *Bridon Am. Corp. v. Mitsui & Co. (U.S.A.), Inc.,* 1983 WL 1897, at *5 (D.D.C. Nov.7, 1983) (same); *but see United States ex rel. Grynberg v. Alaska Pipeline Co.,* 1997 U.S. Dist. LEXIS 5221, at *13 (D.D.C. Mar. 27, 1997) (dismissing the complaint because the sheer volume of the claim and the plaintiff's "shotgun approach" pointed to frivolity); *United States ex rel. Alexander v. Dyncorp, Inc.,* 924 F.Supp. 292, 303–04 (D.D.C.1996) (dismissing the action on Rule 9(b) grounds because of the frivolous nature of claim); *Tripati v. Williams,* 759 F.Supp. 3, 4–5 (D.D.C.1990) (dismissing the complaint because it did not contain any facts to support the allegations). In *Pogue,* the plaintiff averred that in using a complex fraud scheme, the defendant violated the anti-kickback laws in numerous hospitals around the country for 12 years. 238 F.Supp.2d at 267. The plaintiff alleged the specific scheme and its "falsehoods," but the allegations that the scheme was nationwide and took place for 12 years were less specific. *Id.* at 268. Denying a motion to dismiss pursuant to Rule 9(b), the court explained that Rule 9(b) does not require a detailed description of each and every false claim when the fraud takes place over many years. *Id.* at 268.

As indicated earlier, the complaint in this action alleges a complex fraud scheme that that the defendants used to defrauded the government. Compl. ¶ 26. Addressing time and place, the government claims that the defendants' fraudulent scheme began in 1993 and continues into the present in the defendants' offices located in Wash-

ington, D.C. and Northern Virginia. *Id.* ¶¶ 2–3, 5–6, 21–22; *Totten,* 286 F.3d at 551. Because the defendants' scheme is complex and has lasted for a number of years, the allegation of a span of time is sufficient. *Pogue,* 238 F.Supp.2d at 267; *Bouchey,* 860 F.Supp. at 893; *Bridon* 1983 WL 1897, at *5 (alleging range of time rather than exact dates fulfills Rule 9(b)'s pleading requirements when the alleged fraud occurred over an extended period of time).

Describing the content of the false representations, the government explains the defendants' scheme to falsify claims or submit claims based on false records by creating fee tickets that only allowed CPT codes at Level III or higher and by upcoding. Compl. ¶¶ 21–25. The government further proffers that evidence in 12 patient files indicates a discrepancy between the reported treatment and the actual treatment administered by the defendants. *Id.* ¶ 25. These 12 files adequately provide the specificity required in complex fraud cases, even if these patients' cases are only exemplary. *Pogue,* 238 F.Supp.2d at 268 (noting that Rule 9(b) does not require precise delineation of the fraudulent scheme); *United States v. Metzinger,* 1996 WL 412811, at *5 (E.D.Pa. July 18, 1996) (same). Finally, describing the defendants' fraudulently gained benefit, the government used a statistical sample obtained by the HHS–OIG to determine damages to be $318.77 per patient, for 1,649 patients, totaling $525,651. Compl. ¶ 30; *Pogue,* 238 F.Supp.2d at 268; *Chaves County Home Health Service, Inc. v. Sullivan,* 931 F.2d 914, 917–18 (D.C.Cir.1991) (affirming the use of statistical sampling to determine damages caused by the overpayment of Medicare reimbursements).

Following *Bouchey* and *Pogue,* this court concludes that the government need not allege with specificity every element of its cause of action because its complaint

contains allegations from which an inference may be drawn that the government will produce evidence on the essential elements of the fraud claims. *Bouchey,* 860 F.Supp. at 893; *Pogue,* 238 F.Supp.2d at 268. Accordingly, this court determines that by naming the individual defendants, stating the time period during which the alleged fraud took place, asserting where the fraud took place, describing the fraudulent scheme, and setting forth the fraudulently gained benefit, the government has provided an adequate factual basis for its allegations of fraud under Rule 9(b). *Totten,* 286 F.3d at 551. Therefore, the court denies the defendants' motion to dismiss for failure to comply with Rule 9(b).

## IV. CONCLUSION

For the foregoing reasons, the court denies the defendants' motion to dismiss. An Order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this ——— day of August, 2003.