GARLAND, Circuit Judge,
dissenting:
The False Claims Act, “adopted in 1863 and signed into law by President Abraham Lincoln in order to combat rampant fraud in Civil War defense contracts,” S.Rep. No. 99-345, at 8 (1986), is the “Government’s primary litigative tool for combating fraud,” id. at 2. Today, the court adopts an interpretation that, the government warns, leaves “vast sums of federal monies” without False Claims Act protection. Oral Arg. Tr. at 3. Under the court’s interpretation, the government[1] *503 cannot recover against a contractor that obtains money by presenting a false claim to a federal grantee — even if every penny paid to the contractor comes out of an account comprised wholly of federal funds — unless the grantee “re-presents” that false claim to a federal employee. Although Amtrak receives billions of dollars in federal funds that it uses to pay contractor invoices, because it does not (and is not required to) re-present those invoices to the federal government, the court’s ruling immunizes those who defraud even that government-funded corporation from False Claims Act liability.
My colleagues concede that 31 U.S.C. § 3729(a)(2) “has no express requirement of presentment to an officer or employee of the United States Government.” Op. at 497. The court’s interpretation of that subsection as requiring presentment is thus inconsistent with its plain text • — ■ as well as with the statutory definition of “claim” contained in § 3729(c). Moreover, the court’s interpretation is not just inconsistent, but irreconcilable, with the legislative history of the 1986 Amendments to the False Claims Act. See False Claims Amendments Act of 1986, Pub. L. No. 99-562 § 2(c), 100 Stat. 3153 (Oct. 27, 1986) (hereinafter 1986 Amendments). The court marches on nonetheless, surrounding itself on all sides with “canons” of statutory construction, which serve here as “cannons” of statutory destruction. Although I have no quarrel with the canons the court has chosen, properly deployed they do not support the position it has taken in this case.
I
I begin with a preliminary matter: I am perplexed by the court’s long prologue protesting the propriety of deciding the meaning of § 3729(a)(2), followed immediately by its decision on that very issue. See Op. at Part III.A.
First, the rationale for exploring the meaning of subsection (a)(2) is straightforward. As discussed in United States ex rel. Yesudian v. Hoimrd University, the conclusion that liability under § 3729(a)(1) requires that a false claim be presented to the government rather than a grantee is difficult to reconcile with § 3729(c), and perhaps impossible to reconcile with the Act’s legislative history. 153 F.3d 731, 737-38 (D.C.Cir.1998); see infra Parts III, IV. Nonetheless, subsection (a)(l)’s language renders this reading “possible,” Ye-sudian, 153 F.3d at 738, and perhaps would not alone warrant a dissent. As discussed below, however, what is a plausible reading of subsection (a)(1) — given its “presents, or causes to be presented” language — is not plausible for subsection (a)(2), which contains no such language.
Moreover, even if subsection (a)(1) were read as imposing a presentment requirement, reading subsection (a)(2) as not also imposing such a requirement goes a long way toward reconciling § 3729(a) as a whole with § 3729(c) and the legislative history that indicates Congress intended to reach false claims made to grantees.[2] Hence, there is good reason to interpret both subsections (a)(1) and (a)(2) at the same time, because the reasonableness of the interpretation of the former may rest on the meaning assigned to the latter.
Second, there is no procedural impropriety in deciding the meaning of subsection (a)(2) here. The plaintiffs complaint — which the district court dismissed *504 on the pleadings — was not limited to subsection (a)(1), but rather asserted liability under “31 U.S.C. § 3729” in its entirety. Am. Compl. ¶¶ 11, 63, 107. His district court pleadings were more specific, charging a violation of “§§ 3729(a)(1) - (a)(3).” Pl.’s Opp’n to Mots, to Dismiss, at 2. Indeed, our own prior decision in this case noted that “the sections relevant here” proscribe (inter aha) “ ‘false records or statements’ used to induce [false] claims, see § 3729(a)(2).” United States ex rel. Totten v. Bombardier, 286 F.3d 542, 551 (D.C.Cir.2002) (hereinafter Totten I).
Although initially the plaintiff did not separately address the meaning of subsection (a)(2), he did argue that the False Claims Act (FCA) does not contain a presentment requirement. See Appellant’s Br. at 5, 11-18, 21; Pl.’s Opp’n at 25-30. After oral argument in this court, we ordered supplemental briefing specifically “addressing the application of 31 U.S.C. § 3729(a)(2) to this case.” Order (Apr. 20, 2004) (per curiam). The issue has now been fully briefed, removing the fairness concerns that ordinarily militate against entertaining arguments not initially presented. See, e.g., Corson & Gruman Co. v. NLRB, 899 F.2d 47, 50 n. 4 (D.C.Cir.1990) (“We require petitioners and appellants to raise all of their arguments in the opening brief to prevent ‘sandbagging’ of appellees and respondents and to provide opposing counsel the chance to respond.”). There is, therefore, no impediment to our consideration of the meaning of subsection (a)(2).[3]
Finally, my colleagues simply “protest too much.” William ShaKespeabe, Hamlet, act III, sc. 2. No one has compelled them to address this issue. If they truly thought that determining the meaning of subsection (a)(2) were somehow inappropriate, they could have resisted the temptation and left the issue undecided.
Having dispensed with these preliminaries, I now proceed directly to the question of whether liability under § 3729(a)(2) of the False Claims Act requires presentment (or representment) of a claim to a government employee, rather than to a grantee like Amtrak. Part II discusses the text of subsection (a)(2), while Part III addresses the related text of subsection (c). Part IV considers the legislative history of the 1986 Amendments, and Part V reviews the various policy arguments my colleagues advance in support of their position.
II
“The starting point in discerning congressional intent is,” of course, “the existing statutory text.” Lamie v. United States Trustee, 540 U.S. 526, 124 S.Ct. 1023, 1030, 157 L.Ed.2d 1024 (2004). Subsection (a)(2) imposes liability on any person who “knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government.” 31 U.S.C. § 3729(a)(2); see id. § 3729(c) (defining “claim” as, inter alia, “any request ... for money ... which is made to a ... grantee ... if the United States Government provides any portion of the money ... which is requested”). As charged in the complaint, defendants Envi- *505 rovac and Bombardier made false statements in order to get false claims paid with government money. Accordingly, defendants’ conduct appears to fall within the proscription of subsection (a)(2).
. A
The court’s textual response to this argument is that the defendants’ conduct does not fall within subsection (a)(2) because the defendants presented their false claims to Amtrak rather than to a government employee. It is' true that a different subsection — (a)(1) — does contain presentment language. See 31 U.S.C. § 3729(a)(1) (imposing liability on anyone who “knowingly presents or causes to be presented, to an officer or employee of the United States Government” a false or fraudulent claim). Indeed, it is upon that language that the court bases its conclusion that presentment is required for liability under subsection (a)(1). Op. at 490, 495-96. As already noted, however, the court concedes that subsection (a)(2) contains “no express requirement of presentment to an officer or employee of the United States Government.” Id. at 497. And the absence of presentment language in (a)(2), coupled with its presence in (a)(1), cannot help but call to mind a traditional canon of construction: “[W]hen Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.” Barnhart v. Sigmon Coal Co., 534 U.S. 438, 452, 122 S.Ct. 941, 951, 151 L.Ed.2d 908 (2002) (internal quotation marks omitted); see Russello v. United States, 464 U.S. 16, 23, 104 S.Ct. 296, 300-01, 78 L.Ed.2d 17 (1983) (“We refrain from concluding ... that the differing language in the two subsections has the 'same meaning in each.”).[4]
Lacking any reference-to presentment in subsection (a)(2), the court contends that the words “by the Government” have the same effect. But if Congress had meant the same thing, it would have said the same thing. See id. The court might yet have an argument if subsection (a)(2) were limited to false claims “approved” by the government. But the subsection’s requirement is that the claim be “paid or approved by the Government.” 31 U.S.C. § 3729(a)(2) (emphasis added). And as the court recognizes, we should endeavor to construe statutes so that no “word shall be superfluous.” Op. at 499 (quoting Alaska Dep’t of Envtl. Conservation v. EPA, 540 U.S. 461 n. 13, 124 S.Ct. 983, 1002 n. 13, 157 L.Ed.2d 967 (2004)) (internal quotation marks omitted). Hence, claims “paid by” the government suffice for subsection (a)(2) liability, whether approved by it or not.
But, the court counters, the payment to the defendants was not a payment “by the Government” since Amtrak — a government grantee rather than the government itself — wrote the check. The implications of the court’s argument are breathtaking, because they do more than just impose a *506 requirement of re-presentment. If payment “by the government” means that the government itself must write the check, then fraud on grantees who pay their own contractors is not covered by the False Claims Act regardless of whether claims are re-presented to a government employee.
The statutory language requires no such result. In common parlance,[5] the fact that expenses are “paid by” an entity does not mean that the entity paid them directly. When a student says that his college living expenses are “paid by” his parents, he typically does not mean that his parents send checks directly to his creditors. Rather, he means that his parents are the ultimate source of the funds he uses to pay those expenses. See United States Suppl. Br. at 12-13 (arguing that “a claim is ‘paid by the Government’ either if the government pays it directly or if the money is disbursed by a third-party funding recipient who receives from the government all or part of the funding for the payment”); see also United States ex rel. Marcus v. Hess, 317 U.S. 537, 544-45, 63 S.Ct. 379, 384-85, 87 L.Ed. 443 (1943) (“Government money is as truly expended whether by checks drawn against the Treasury to the ultimate recipient or by grants in aid....”).[6]
This interpretation of “paid by the Government” — as requiring that the government be either the direct or indirect source of the funds — is confirmed by § 3729(c), which defines the word “claim.” As discussed in Part III, § 3729(c) provides that a request for money made to a grantee is a “claim” under the FCA “if the United States Government provides any portion of the money or property ..., or if the Government will reimburse such ... grantee, or other recipient for any portion of the money or property.” 31 U.S.C. § 3729(c). This interpretation is also supported by the legislative history of the 1986 Amendments which, as discussed in Part IV, stresses that a “false claim is actionable although the claims or false statements were made to a party other than the Government, if the payment thereon would ultimately result in a loss to the United States.” S.Rep. No. 99-345, at 10 (emphasis added); see H.R.Rep. No. 99-660, at 21 (1986).
The court protests that this reading of “paid by the Government” has a “fatal flaw: it yields exactly the same meaning that would result if Section 3729(a)(2) did not contain the words ‘by the Government’ at all.” Op. at 498. Not so. Those words make clear that, for liability to attach, the government must have been the source of the funds either directly or indirectly; that is, the fraud must ultimately result in a loss to the government. Indeed, without *507 those words, the subsection could be read to make liable any person who “knowingly makes ... a false statement ... to get a false or fraudulent claim paid” by anyone.
Finally, if subsection (a)(2) does contain an implicit presentment requirement as my colleagues suggest, one is entitled to ask whether their reading doesn’t have the “fatal flaw” they ascribe to mine: it allows subsection (a)(1) “to swallow” (a)(2), leaving the latter with no (or very little) independent meaning. Op. at 501-02. My colleagues wait until virtually the last page of their opinion to say what they think subsection (a)(2) means: “[I]t seems clear,” they say, “that (a)(2) is ... designed to prevent those who make false records or statements to get claims paid or approved from escaping liability solely on the ground that they did not themselves present a claim for payment or approval.” Id. (citing United States ex rel. Harris v. Bernad, 275 F.Supp.2d 1, 6 (D.D.C.2003), citing, in turn, John T. Boese, Civil False Claims & Qui Tam Actions § 2.01[B], at 2-22 (2d ed. Supp. 2004-1)). But since this reading still implies that someone must have presented the claim for liability to attach under subsection (a)(2), it does not appear to differ from liability under (a)(1) — or subsection (a)(3) for that matter •— which itself ensures that one cannot avoid liability for false claims that he causes but does not himself present. 31 U.S.C. § 3729(a)(1) (making liable anyone who knowingly presents, “or causes to be presented” a false claim); see id. § 3729(a)(3) (same for anyone who “eon-spires to defraud the Government by getting” a false claim paid).[7] The court’s restrictive reading is neither clear from the statutory text nor supported by anything more than district court dicta, which in turn is supported by nothing more than a statement in a practitioner’s guide, which itself, contains no explanation for the conclusion that it draws. See Bernad, 275 F.Supp.2d at 6 (citing Boese § 2.01[B], at 2-22).
B
Without support in the statutory text, the court retreats into legislative history — an ironic choice, given the court’s protestations in the early pages of its opinion. But the retreat is to no avail.
First, noting that the phrase “by the Government” was added in 1986, the court' concludes that it must have added something new to the statute’s previous meaning. “The intended effect of adding ‘by the Government,’ ” the court says, “is fairly obvious: Congress was referring back to the presentment requirement of Section 3729(a)(1).” ' Op. at 499. But that divination of congressional intent is not obvious at all. ■ “Paid by the Government” is not a phrase that brings “presented to the Government” to mind, and there was no reason for Congress to employ different language to express the same concept. See Russello, 464 U.S. at 23, 104 S.Ct. at 300-01. Nor does the legislative history support the court’s view of congressional intent: not one word in the 1986 legislative history even mentions the addition of “by the Government,” let alone reflects such an intent.[8]
*508 Indeed, as discussed in Part IV, the legislative history suggests precisely the opposite. The same Congress that added “by the Government” also expansively defined the term “claim” to make clear that the FCA covers fraud on grantees, whether or not accompanied by presentment to the government. It is difficult to believe that this Congress, after proclaiming its purpose to reach fraud regardless of presentment, then subverted that purpose using words that do not mention presentment at all. Accordingly, rather than add something new to the FCA, the better explanation is that those words were intended to clarify what the Supreme Court had long held: that the FCA reaches only those false claims that ultimately result in losses to the United States. See United States v. Neifert-White Co., 390 U.S. 228, 232, 88 S.Ct. 959, 961-62, 19 L.Ed.2d 1061 (1968); Marcus, 317 U.S. at 544-45, 63 S.Ct. at 384-85. Indeed, that reading is in keeping with the overall purpose of the 1986 Amendments, which was to “clarif[y] that the statute permits the Government to sue under the False Claims Act for frauds perpetrated on Federal grantees, including States and other recipients of federal funds.” S.Rep. No. 99-345, at 21 (emphasis added).
Next, the court retreats even deeper into legislative history, tracing the FCA’s language and structure all the way back to 1863. As the court notes, from 1863 through 1982, the liability provisions of the FCA were contained in a single, “interminable” sentence codified at 31 U.S.C. § 231. Op. at 499-500. That sentence (with clause numbers inserted for ease of reference) made liable any person:
who [1] shall make or cause to be made, or present or cause to be presented, for payment or approval, to or by any person or officer in the civil, military, or naval service of the United States, any claim upon or against the Government of the United States, ... knowing such claim to be false, fictitious, or fraudulent, or who, [2] for the purpose of obtaining or aiding to obtain the payment or approval of such claim, makes, uses, or causes to be made or used, any false bill, receipt, voucher, roll, account, claim, certificate, affidavit, or deposition, knowing the same to contain any fraudulent or fictitious statement or entry, or who [3] enters into any agreement, combination, or conspiracy to defraud the Government of the United States, ... by obtaining or aiding to obtain the payment or allowance of any false or fraudulent claim, or who, [4] having charge, possession, custody, or control of any money or other public property ..., with intent to defraud the United States ... delivers ... any amount of such money or property less than that for which he received a certificate or took a receipt, and every person who....
31 U.S.C. § 231 (1976) (emphasis added). Contrary to the court’s characterization, Op. at 500,1 do not disagree that Congress intended no substantive change when, in 1982, it divided this sentence into the numbered subsections of 31 U.S.C. § 3729(a). See Pub.L. No. 97-258, § 1, 96 Stat. 978 (Sept. 13, 1982); H.R.Rep. No. 97-651, at 1 (1982). But I do disagree with the conclusion the court draws from that fact, since in my view the second clause of the pre-1982 FCA did not contain a presentment requirement.
*509 The first clause of the “interminable” sentence is the precursor to § 3729(a)(1) and contains the now-familiar presentment language. The conclusion that my colleagues draw from this is that § 3729(a)(2) — whose precursor is the second clause of the sentence, which unlike the first contains no reference to presentment — can “only be read in conjunction with” the earlier presentment clause. Op. at 500. But if, as my colleagues apparently intend, “in conjunction with” means “to incorporate,” this reading makes sense only if the clauses of the pre-1982 version of the FCA were intended to largely duplicate each other. And they were not.
The multiple clauses of the pre-1982 version were not intended to repeatedly restate the same concept in different words, but rather to encompass the various ways by which a person could fraudulently obtain government funds.[9] As the Supreme Court put it, “the Act was intended to reach all types of fraud, without qualification, that might result in financial loss to the Government.” NeifertWWhite, 390 U.S. at 231-32, 88 S.Ct. at 961. This view is supported by the sentence’s multiple uses of the disjunctive “or,” which indicate that subsection (a)(2) should be read in “disjunction” rather than “conjunction” with subsection (a)(1), and by the “rule against superfluities” cited by the court, Op. at 499, which bars a reading that would have one of several distinct clauses do all the necessary work. See Hibbs v. Winn, — U.S.-,-, 124 S.Ct. 2276, 2286, 159 L.Ed.2d 172 (2004); Duncan v. Walker, 533 U.S. 167, 174, 121 S.Ct. 2120, 2125, 150 L.Ed.2d 251 (2001).
To support its novel incorporation theory, the court contends that the reference to “such claim” in subsection (a)(2)’s precursor clause[10] “was a shorthand reference to the claim already identified in the current subsection (a)(1) — that is, a claim that would be presented or caused to be presented to the United States.” Op. at 500. But, the pre-1982 version of the FCA does not use the court’s syntax: “a claim that would be presented.” To the contrary, rather than use the word “presents” as a way to describe a claim, the pre-1982 statute uses it to describe something done to a particular kind of claim. And what kind of claim? The answer is: a false “claim upon or against the Government of the United States” in the precursor to subsection (a)(1),[11] and a “false or fraudulent claim” in the current version.[12] Those *510 are the phrases that are the logical referents for “such claim,” and neither contains a reference to presentment.[13]
It is also important to remember that the history of the False Claims Act did not end in 1982. Whatever meaning “such claim” had prior to 1982, and whatever Congress intended by eliminating “such” in that year, the new definition of “claim” in the 1986 Amendments eliminates any reason a reader of subsection (a)(2) might have to refer to subsection (a)(1) to understand the meaning of the term. And that definition contains no reference to presentment. See 31 U.S.C. § 3729(c). In short, whatever comfort the court derives from the pre-1982 history of the FCA grows cold after 1986. See Lamie, 540 U.S. at ■-■, 124 S.Ct. at 1030 (“The starting point in discerning congressional intent is the existing statutory text, and not the predecessor statutes.”) (internal citation omitted).
Finally, the court relies on “scholarly commentary” to support the “proposition that subsection (a)(2) harkens back to (a)(1), and that the latter requires presentment.” Op. at 501 (citing Boese § 2.01[B], at 2-21). But the “practitioner’s” guide, Boese at i, that the court cites adds nothing to its argument. While the guide does include the phrase, “a claim [must] be presented to the United States,” in a list of the elements of subsection (a)(2), see id. at 2-21, it does not cite a single case or offer a single argument in support of that proposition. The court’s opinion must stand or fall on its own.
III
To this point, the analysis has principally proceeded by examining § 3729(a) in isolation. But “words of a statute must be read in their context and with a view to their place in the overall statutory scheme,” FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133, 120 S.Ct. 1291, 1301, 146 L.Ed.2d 121 (2000) (quotation marks omitted), and here that context includes consideration of § 3729(c). In 1986, Congress amended the FCA by adding that subsection, which contained a new and comprehensive definition of the word “claim”:
For purposes of this section, “claim” includes any request or demand ... for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded.
31 U.S.C. § 3729(c) (italics and bolding added).
This definition plainly reaches not only those cases in which the grantee pays out money and then gets reimbursed by the government (the second “if’ clause), but also those where “the United States Government provides any portion of the money” requested (the first “if’ clause). The definition does require that a request or *511 demand be made to the grantee, but does not mention re-presentment to the government. Indeed, such a re-presentment requirement is counter-intuitive with respect to the cases covered by the first “if’ clause. Unlike the case in which a grantee advances its own funds and then seeks federal reimbursement, when the government provides the grantee with federal funds and the grantee then disburses them upon receipt of a contractor’s bill, it is unlikely that the grantee would have any reason to re-present that bill to the United States. Accordingly, the government contends that a re-presentment requirement would “render[ ] the first ‘if clause meaningless,” United States Br. at 13, contravening the “rule against superfluities,” see Op. at 499.
In response, the court accuses the government of “rhetorical sleight of hand” by equating “the present-tense ‘provides’ in the statute with the past-tense ‘has provided’ in the argument.” Id. at 493. I disagree. In common parlance, it does not change the tense of “provides” to say that the government “provides” Amtrak with the funds it uses to pay contractors who later submit claims to Amtrak. Indeed, the court might be charged with some tense-shifting of its own, effectively transforming “provides” into the future tense by reading the first “if’ clause as attaching liability only: “if the Government provides the funds to the grantee upon presentment of a claim to the Government.” Id. (emphasis in original). Since in the real world these events do not transpire simultaneously, the court’s contention that liability attaches only if the government provides the funds to the grantee “upon presentment of a claim” must mean “after presentment of a claim,” thus effectively transforming “provides” into the future-tense “will provide.” Such a transformation is particularly suspect in the context of § 3729(c), since its second “if’ clause shows that Congress knew how to use that verb form when it wanted to. See 31 U.S.C. § 3729(c) (“if the Government will reimburse such contractor (emphasis added).
The primary problem with the court’s theory is not tense transformation, however, but the insertion of extra words into the statute. Subsection (c)’s first “if’ clause does not state, as the court does, that “False Claims Act liability will attach if the Government provides the funds to the grantee upon presentment of a claim to the Government.” Op. at 493 (emphasis added). Rather, it simply defines claim as a “request or demand ... to a contractor, grantee, or other recipient” — the phrase “presentment of a claim to the Government” is not to be found. And as the old canon says, “we ordinarily resist reading words or elements into a statute that do not appear on its face.” Bates v. United States, 522 U.S. 23, 29, 118 S.Ct. 285, 289-90, 139 L.Ed.2d 215 (1997); see Lamie, 540 U.S. at-, 124 S.Ct. at 1032. Or, as the Supreme Court put it more pithily in United States v. Naftalin: “The short answer is that Congress did not write the statute that way.” 441 U.S. 768, 773, 99 S.Ct. 2077, 2081-82, 60 L.Ed.2d 624 (1979).
IV
I now turn to the legislative history of the 1986 Amendments. Although the court fires off an array of canons to preclude such inquiry, all refer to situations in which the statutory text is plain and unambiguous.[14] But, as is readily apparent, neither § 3729(a)(2) nor § 3729(c) mentions *512 the word “presentment” in any of its variations. And whatever one may think of the arguments that can be made from the actual text, no one can say the False Claims Act “unambiguously” imposes a presentment requirement for liability under subsection (a)(2). Counsel for Bombardier rightly conceded as much at oral argument. Oral Arg. Tr. at 29-30. Accordingly, reference to the legislative history is appropriate. See Blum v. Stenson, 465 U.S. 886, 896, 104 S.Ct. 1541, 1547-48, 79 L.Ed.2d 891 (1984).
Once the legislative history is consulted, any residual uncertainty about whether to read a presentment requirement into the statute disappears. As this court recognized in Yesudian, the purpose of the new definition of “claim” added in 1986 was to “ ‘clarif[y] that the statute permits the Government to sue under the False Claims Act for frauds perpetrated on Federal grantees, including States and other recipients of federal funds.’ ” 153 F.3d at 737 (quoting S.Rep. No. 99-345, at 21). The Senate Judiciary Committee stressed that it did not matter whether the claim was made to a government employee or to a grantee. “[A] false claim is actionable,” the Committee said, “although the claims or false statements were made to a party other than the Government, if the payment thereon would ultimately result in a loss to the United States.” S.Rep. No. 99-345, at 10 (emphasis added). And the House Judiciary Committee agreed: “[CJlaims or false statements made to a party other than the Government are covered by this term if payment thereon would ultimately result in a loss to the United States.” H.R.Rep. No. 99-660, at 21 (emphasis added).
Moreover, the “Senate Judiciary Committee indicated that the new subsection was inserted in response to earlier court holdings that ‘a fraud against the grantee does not constitute a fraud against the Government of the United States’ where ‘once the United States has made the grant to the State ... or other institution, it substantially relinquishes all control over the disposition of the money.’ ” Yesudian, 153 F.3d at 737 (quoting S.Rep. No. 99-345, at 21). The example cited by the Committee was United States ex rel. Salzman v. Salant & Salant, 41 F.Supp. 196 (S.D.N.Y.1938), in which a district court dismissed a complaint that alleged the defendant had submitted false claims for payment to the Red Cross, because the Red Cross — although a recipient of federal funds — was neither the government nor a department thereof. S.Rep. No. 99-345, at 21. At the same time, the Committee approvingly cited cases akin to this one, where courts had held that “a false claim to the recipient of a grant from the United States ... is a false claim to the United States.” Id. at 10 (citing United States ex rel. Davis v. Long’s Drugs, 411 F.Supp. 1144 (S.D.Cal.1976)). Thus, to read the False Claims Act as requiring presentment to the government “would leave intact those court opinions Congress seemingly intended to overrule,” while overturning those that Congress cited with approval. Yesudian, 153 F.3d at 738.
The court does not, and cannot, dispute that requiring presentment leaves intact “some” of the opinions that Congress intended to overrule.[15] Yet, it contents itself with the fact that requiring presentment does not leave intact one of the cases that Congress cited with disapproval, United *513 States v. Azzarelli Construction Co., 647 F.2d 757 (7th Cir.1981). Op. at 495. But while it is true that imposing a presentment requirement does not interfere with the overruling of Azzarelli, that is only because Azzarelli was a case that Congress wanted to overrule for a different reason: it had held that the FCA did not apply to grantees “where the Federal contribution is a fixed sum.” S.Rep. No. 99-345, at 15. The fact that the court’s interpretation can be squared with Congress’ intentions regarding that single case does not square its interpretation with the legislative history of the 1986 Amendments.
Taking another tack, the court dismisses the import of the 1986 legislative history altogether, noting that the Senate Report was based on a version of the bill that did not yet include the provision that added the words “by the Government” to subsection (a)(2). See Op. at 501. As discussed in Part II, however, those words do not impose a requirement of presentment to the government. Nor is there any legislative history that suggests they do. Indeed, the history is entirely silent as to why the words were added, and it is simply not plausible that Congress, which had expressed its intent to clarify that the FCA covers false claims to grantees, reversed itself without so much as a whisper. As the Supreme Court said in rejecting an analogous contention that Congress had repealed municipal liability in the 1986 Amendments, “it is simply not plausible that Congress intended” to make such a change “sub silentio by the very Act it passed to strengthen the Government’s hand in fighting false claims.” Cook County, Illinois v. United States ex rel. Chandler, 538 U.S. 119, 133-34, 123 S.Ct. 1239, 1248-49, 155 L.Ed.2d 247 (2003).
Nor can my colleagues’ dismissal of the clear legislative history find support in the arms of the inestimable Judge Friendly. Op. at 495 (citing Henky J. Friendly, BenChmariis 216 (1967)). In fact, the canon of construction propounded by the good judge supports the opposing view:
[I]f an intent clearly expressed in committee reports is within the permissible limits of the language and no construction manifestly more reasonable suggests itself, a court does pretty well to read the statute to mean what the few legislators having the greatest concern with it said it meant to them.
Friendly, at 216. In this case, the intent expressed in the committee reports is well within the permissible limits of the language, and there is no construction that is more reasonable. Accordingly, in Judge Friendly’s view, this court would do “pretty well to read the statute to mean” what Congress said it meant. Id.
V
Finally, the court falls back on policy considerations to support its presentment requirement. Op. at 496-97. The court’s arguments are flawed on their own terms. More important, the policies on which the court relies are not those of the Congress of the United States.
The court’s policy analysis begins with the contention that an “interpretation that would advance the statute’s general purposes to a greater extent” should not “always prevail over one that would both advance the same ends •— though to a slightly lesser extent ■— and have fewer drawbacks.” Op. at 496. This is fine as canons go, but only if Congress has indicated that it would be satisfied if its ends were advanced to “a slightly lesser extent” than the face of the statute suggests. And only if the court’s idea of a “drawback” is the same as the legislature’s.[16] But those *514 caveats are not satisfied here, where the statutory language includes no presentment requirement and the legislative history makes clear that Congress did not want one.
Next, the court identifies several “complications” that could flow from permitting recovery where there is fraud on a grantee, but no presentment to the government. Op. at 496. The first such complication is that “extending False Claims Act liability here seems to result in quadruple liability for false claimants: a grantee could presumably bring suit and obtain a recovery for itself, in addition to the treble damages the Government and the relator divvy up under the Act.” Id. But the premise of this argument is dubious. The FCA permits recovery only on behalf of the government, and only for “damages which the Government sustains.” 31 U.S.C. § 3729(a).[17] For the grantee also to bring suit successfully, it would have to rely on some other source of law. And it is pure speculation that such an unnamed (perhaps state common law) cause of action would permit a grantee duplicative recovery, rather than require allocation among the injured parties according to their injuries. Moreover, even if state law did permit such recovery, a mechanical presentment requirement would not obviate the court’s concern.
The other main complication identified by the court is that, without a presentment requirement, “the potential reach of the Act” is “almost boundless,” potentially stretching to “any false claim made to any college or university, so long as the institution has received some federal grants.” Op. at 497.[18] This argument also fails. As noted, the FCA limits damages to those “which the Government sustains.” 31 U.S.C. § 3729(a). Although determining whether the government has been damaged by fraud on a grantee may be difficult in some cases, in others it will not. Here, for example, the plaintiff alleges that the money was “paid out of [Amtrak’s] capital budget which consists entirely of money[ ] received from the United States Government, that was specifically designated for capital expenditures.” Dillon Decl. ¶ 5; see id. ¶ 7. As the government describes the current state of the record, “it is the United States that provided much, if not all, of the funding for the projects with respect to which the alleged fraud here was committed, and it is the United States Government that will bear much, if not all, of any ensuing losses.” United States Suppl. Br. at 11. Moreover, if traceability is a problem, it is a problem borne by the plaintiff, who must prove that the claim was “paid ... by the Government” in order to establish liability under § 3729(a)(2), and who must demon *515 strate the extent of the United States’ losses in order to recover treble damages under § 3729(a).
In any event, there is no evidence that Congress shares the policy concerns identified by the court. To the contrary, far from worrying that the False Claims Act might extend too far in covering fraud on grantees, Congress insisted that “a false claim to the recipient of a grant from the United States or to a State under a program financed in part by the United States, is a false claim to the United States.” S.Rep. No. 99-345, at 10. And it sought to ensure that “a false claim is actionable although the claims or false statements were made to a party other than the Government, if the payment thereon would ultimately result in a loss to the United States.” Id.
The Supreme Court has long recognized the breadth of Congress’ concern in enacting the FCA, noting that “Congress wrote expansively, meaning ‘to reach all types of fraud, without qualification, that might result in financial loss to the Government.’ ” Cook County, 538 U.S. at 129, 123 S.Ct. at 1245-46 (quoting Neifert-White, 390 U.S. at 232, 88 S.Ct. at 961-62). As a consequence, “[i]n the various contexts in which questions of the proper construction of the Act have been presented, the Court has consistently refused to accept a rigid, restrictive reading, even at the time when the statute imposed criminal sanctions as well as civil.” Neifert-White, 390 U.S. at 232. And, in language that is a particularly apt rejoinder to the contention that a representation requirement is needed to rein in the Act’s potential reach, the Court has emphasized that federal funds granted to third parties “are as much in need of protection from fraudulent claims as any other federal money, and the statute does not make the extent of their safeguard dependent upon the bookkeeping devices used for their distribution.” Marcus, 317 U.S. at 544, 63 S.Ct. at 384 (emphasis added).
Indeed, if there are policy concerns that should be taken into account in choosing between possible interpretations of the FCA, they are the ones outlined in the preceding two paragraphs, because they are the ones that Congress itself expressed. And measured by those concerns, it is the interpretation that the court adopts today that should give us pause. The consequence of today’s ruling is a dramatic cutback in the federal government’s ability to protect itself against false claims on federal grant money. Where a grantee receives federal money in advance and then pays its contractors directly — without the federal government micromanaging the program by insisting on receiving and approving every invoice before payment — the FCA will no longer provide an avenue to recover for false claims. And as this case makes clear, the court’s ruling applies even to an entity like Amtrak: a “publicly-funded operation,” H.R.Rep. No. 105-251, at 21 (1997), that receives almost $1 billion dollars in federal grant money annually, see 49 U.S.C. § 24104(a),[19] and that paid the defendants in this case out of federal funds that were specifically provided for the contract at issue, see Am. Compl. ¶ 43; Dillon Decl. ¶ 5. The removal of the protection of the False Claims Act in these circumstances is far more than a mere “complication.”
VI
The United States charges that the interpretation the court adopts today will “significantly restrict[] the reach of the *516 False Claims Act in a manner than Congress did not intend, withdrawing False Claims Act protection with respect to a broad swath of false claims inflicting injury-on the federal fisc.” United States Br. at 9. The United States is right. If that interpretation were required by the statutory language, we would of course be required to adopt it nonetheless. But the court’s interpretation is neither compelled by nor consistent with the language of 31 U.S.C. § 3729(a)(2) and (c). I therefore respectfully dissent.

. Although in the instant case the plaintiff is a private "relator” suing in the name of the government, see 31 U.S.C. § 3730(b), the statute authorizes the government to sue in its own name or to take over a relator’s suit and conduct the action itself, see id. § 3730(b)(2), (b)(4)(A). The statute’s substantive provisions *503 are the same regardless of whether the government or a relator prosecutes the action.

. As discussed below, achieving such a reconciliation would not "circumvent[] plain statutory language,” Op. at 501, as there is no language of presentment — "plain” or otherwise — in § 3729(a)(2).

. See United States Nat'l Bank of Oregon v. Independent Ins. Agents of Am., 508 U.S. 439, 445-48, 113 S.Ct. 2173, 2177-79, 124 L.Ed.2d 402 (1993) (holding that this court had authority, after ordering supplemental briefing, to decide the validity of a statutory section despite the parties’ failure to dispute it); Aeree v. Republic of Iraq, 370 F.3d 41, 48, 58 (D.C.Cir.2004) (determining the validity of a cause of action, an issue not addressed by the parties, after advising the parties that it would be addressed at oral argument); Cicippio-Puleo v. Islamic Republic of Iran, 353 F.3d 1024, 1030 (D.C.Cir.2004) (considering an issue not raised by the parties after giving them an opportunity to submit supplemental briefing).

. The court also finds support for its presentment theory in what it calls the “parallel structure” of subsections (a)(1) and (a)(2): "Subsection (a)(1) refers to presenting claims to the government for ‘payment or approval;’ subsection (a)(2) to making false statements to get claims ‘paid of approved by the Government.’ ” Op. at 499-500. But these two subsections are not “parallel” at all. Instead, they are quite distinct, imposing liability on different kinds of fraud: the first captures the person "who ... presents ... to an ... employee of the United States Government ... a false ... claim for payment or approval”; the second catches the one "who ... makes ... a false . .. statement to get a false .. . claim paid or approved by the Government.” 31 U.S.C. § 3729(a)(1), (2). The fact that both subsections require some form of payment or approval does not mean that they both require presentment to a government official.

. See Walters v. Metropolitan Educ. Enters., Inc., 519 U.S. 202, 207, 117 S.Ct. 660, 663-64, 136 L.Ed.2d 644 (1997) (“In the absence of an indication to the contraiy, words in a statute are assumed to bear their ordinary, contemporary, common meaning.’’) (internal quotation marks omitted).

. In the related context of 18 U.S.C. § 641, which criminalizes embezzlement of “money or thing[s] of value of the United States,” courts have held that “federal grant money does not lose its federal character simply because it is administered by a nonfederal agency.” United States v. Largo, 775 F.2d 1099, 1102 n. 3 (10th Cir.1985); see, e.g., United States v. Long, 996 F.2d 731 (5th Cir.1993) (holding that a university's funds, received from a state agency but originating in the federal treasury, retained their federal character for purposes of § 641); United States v. Foulks, 905 F.2d 928 (6th Cir.1990) (finding that grant funds in the possession of the Toledo Salvation Army constituted funds of the United States); United States v. Scott, 784 F.2d 787, 790-91 (7th Cir.1986) (concluding that theft of funds from a local government agency, which was primarily funded by the federal government, appropriately triggered § 641).

. Indeed, the authority cited by the court acknowledges that under this reading, “many violations of [(a)(2)] may also be considered violations of Section (a)(1) under the 'causes to be presented’ language,” and the "distinctions between the two sections may be even smaller than they first seem.” Boese § 2.01 [B], at 2-22.

. As the preceding discussion malees clear; my colleagues are incorrect on two counts in saying that "[t]he dissent is unwilling to give the addition of 'by the Government' to (a)(2) any weight because it cannot find a statement in any committee report explaining what Congress intended to accomplish by the amendment.” Op. at 506 n.6. First, T do give "by the Government” weight: it clarifies that the *508 FCA only reaches false claims where the government directly or indirectly provides the funds and suffers the loss. Second, my argument does not rest on the absence of legislative history, but rather on the best interpretation of the language of § 3729(a)(2) and (c). The absence of legislative history merely (and completely) counters my colleagues’ own suggestion that the legislative history supports their interpretation.

. The court is thus wrong to say that my . interpretation "embrace[s] a reading of (a)(2) that would render the plain language of (a)(1) largely meaningless.” Op. at 498; see id. at 501. Moreover, as the government suggests, "there may be acts that fall within the scope of subsection (a)(1), but do not fall within the scope of subsection (a)(2)” in light of the fact that (a)(1) proscribes "false or fraudulent claim[s],” 31 U.S.C. § 3729(a)(1), while (a)(2) deals with certain "false record[s] or statement[s],” id. § 3729(a)(2). United States Suppl. Br. at 6.

. See 31 U.S.C. § 231, cl. 2 (1976) (making liable any person "who, for the purpose of obtaining ... payment or approval of such claim, makes ... any false bill, receipt, voucher, roll, account, claim, certificate, affidavit, or deposition, knowing the same to contain any fraudulent or fictitious statement or entry”) (emphasis added).

. See 31 U.S.C. § 231 (1976) (“Any person ... who [1] shall make or cause to be made, or present or cause to be presented, for payment or approval, to or by any person or officer in the civil, military, or naval service of the United States, any claim upon or against the Government of the United States, ... knowing such claim to be false, fictitious, or fraudulent, or who, [2] for the purpose of obtaining or aiding to obtain the payment or approval of such claim, makes, uses, or causes to be made or used, any false bill....”) (emphasis added).

. See 31 U.S.C. § 3729(a)(1) (making liable any person who "knowingly presents, or causes to be presented, to an officer or employee of the United States Government ... a *510 false or fraudulent claim for payment or approval”) (emphasis added).

. Nor is the court correct in saying that "legislative history ... explains why the word 'such' disappeared from the statute,” Op. at 500 • — • at least not in any way helpful to the court’s interpretation. The single sentence that the court relies on merely says: " 'The word "such” is [no longer] used as a demonstrative adjective.’ ” Id. (quoting H.R.Rep. No. 97-651, at 3). That is description, not "explanation.” Indeed, if anything, it is a description that supports the reading argued for in the above paragraph. After 1982, subsection (a)(2) no longer modified "claim” with "such” as in its precursor clause, and instead substituted the specific adjectival phrase that Congress had intended: "a false or fraudulent” claim. 31 U.S.C. § 3729(a)(2).

. See Op. at 493-94 (citing Lamie, 540 U.S. at-, 124 S.Ct. at 1030 ("[W]hen the statute’s language is plain, the sole function of the courts ... is to enforce it according to its terms.”) (internal quotation marks omitted); Ratzlaf v. United States, 510 U.S. 135, 147-48, 114 S.Ct. 655, 662-63, 126 L.Ed.2d 615 (1994) (stating that courts should "not resort to legislative history to cloud a statutory text that is clear”); Davis v. Michigan Dep't of *512 Treasury, 489 U.S. 803, 808 n. 3, 109 S.Ct. 1500, 1505 n. 3, 103 L.Ed.2d 891 (1989) (“Legislative history is irrelevant to the interpretation of an unambiguous statute.”)).

. See Op. at 495 (conceding that "Totten and the United States may be on firmer ground with respect to some of the ... cases with which the Committee expressed displeasure”).

. See Lamie, 540 U.S. at-, 124 S.Ct. at 1032 ("Our unwillingness to soften the import *514 of Congress' chosen words even if we believe the words lead to a harsh outcome is longstanding.”); Friendly, at 203 ("[A] court will 'do well to stick close to the text and not import argumentative qualifications from broad, unexpressed claims of policy.' " (quoting Utah Junk Co. v. Porter, 328 U.S. 39, 44, 66 S.Ct. 889, 892, 90 L.Ed. 1071 (1946))).

. In addition to trebling the amount of the government's damages, the Act provides for the recovery of an additional amount, not less than $5,500 and not more than $11,000. See 31 U.S.C. § 3729(a); see also Federal Civil Penalties Inflation Adjustment Act of 1990, Pub.L. No. 101-410, § 5, 104 Stat. 891 (Oct. 5, 1990); 28 C.F.R. § 85.3(a)(9).

. The third asserted complication, that it would be "unclear how to apply the ‘knowingly presents' element,” if there were no "requirement of presentment to the Government,” Op. at 496-97, may be relevant with respect to subsection (a)(1), but has no relevance to subsection (a)(2). As previously noted, the latter does not contain the "knowingly presents” language that causes the complication. Compare 31 U.S.C. § 3729(a)(1), with id. § 3729(a)(2).

. See also S.Rep. No. 105-85, at 2 (1997) ("Since 1971, ... Amtrak has received more than $20 billion in Federal funding.”); Lebron v. National R.R. Passenger Corp., 513 U.S. 374, 385, 115 S.Ct. 961, 967-68, 130 L.Ed.2d 902 (1995) (noting that Congress subsidizes "Amtrak’s perennial losses”).