Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued April 20, 2004        Decided August 27, 2004

No. 03-7128

UNITED STATES OF AMERICA *EX REL.* EDWARD L. TOTTEN,
APPELLANT

v.

BOMBARDIER CORPORATION AND ENVIROVAC, INC.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 98cv00657)

*H. Vincent McKnight, Jr.* argued the cause and filed the briefs for appellant.

*Thomas M. Bondy*, Attorney, U.S. Department of Justice, argued the cause for *amicus curiae* United States of America in support of appellant. With him on the brief were *Peter D. Keisler*, Assistant Attorney General, U.S. Department of Jus-

---

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

tice, *Roscoe C. Howard, Jr.*, U.S. Attorney, *Douglas N. Letter*, Attorney, *Colin C. Carriere*, Counsel, National Railroad Passenger Corporation (Amtrak), and *D. Hamilton Peterson*, Deputy Counsel.

*Mark R. Hellerer* argued the cause and filed the brief for appellee Bombardier Corporation. *Philip L. Douglas* entered an appearance.

*Randall L. Mitchell* argued the cause for appellee Envirovac, Inc. With him on the brief was *Paul E. Lehner*. *Barbara Van Gelder* and *Scott M. McCaleb* entered appearances.

Before: ROGERS, GARLAND, and ROBERTS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* ROBERTS.

Dissenting opinion filed by *Circuit Judge* GARLAND.

ROBERTS, *Circuit Judge*: Relator Edward Totten brought a *qui tam* action against Bombardier Corporation and Envirovac, Inc., alleging that those companies violated the False Claims Act, 31 U.S.C. § 3729, by delivering allegedly defective rail cars to the National Railroad Passenger Corporation (Amtrak) and submitting invoices to Amtrak for payment from an account that included federal funds. The pertinent provision of the Act imposes liability for civil penalties and treble damages on anyone who "knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval." *Id.* § 3729(a)(1). Amtrak is not the Government, 49 U.S.C. § 24301(a)(3), and Totten alleged only that the funds Amtrak used to pay Bombardier and Envirovac came in part from the Government — not that those companies presented their claims to an officer or employee of the Government. The district court accordingly dismissed Totten's complaint. We agree that under the plain language of Section 3729(a)(1), claims must be presented to an officer or employee of the Government before liability can attach. We therefore affirm.

## I.

This is Totten's second appeal in this case; the facts are summarized in our opinion in the first, *United States ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 545 (D.C. Cir. 2002) (*Totten I*):

> The dispute giving rise to this case began when Amtrak contracted with two private companies, Bombardier Corporation and Envirovac, Inc. ("the Contractors"), to supply rail cars with new toilet systems for its trains. Bombardier makes the cars and Envirovac makes the toilets. Specifications for the toilet systems were incorporated into Amtrak's contracts with the Contractors. On March 16, 1998, Totten, a former Amtrak employee, filed a suit against the Contractors under the [False Claims Act], alleging that they had supplied unsuitable parts that did not meet the contractual specifications.

According to Totten's amended complaint, Bombardier and Envirovac are liable under the False Claims Act because they submitted periodic invoices to Amtrak for noncompliant rail cars and Amtrak paid the invoices with funds that included federal grant money.

The district court dismissed the complaint at the threshold, concluding that 49 U.S.C. § 24301(a) — which states that Amtrak "shall not be subject to title 31" — bars False Claims Act suits that involve claims made to Amtrak. *United States ex rel. Totten v. Bombardier Corp.*, 139 F. Supp. 2d 50, 54 (D.D.C. 2001). This court reversed and remanded, holding that Section 24301(a) is not a bar to False Claims Act suits against those who submit claims to Amtrak: in such cases, we reasoned, it is the claimant — not Amtrak — that is rendered "subject to" the Act. *Totten I*, 286 F.3d at 548, 550. The court in *Totten I* "express[ed] no opinion" on another threshold question in the case: "whether [a False Claims Act] plaintiff may prevail against a defendant who submits a false 'claim' to a federal grantee (such as Amtrak), without presenting evidence that the claim was ever actually submitted to the U.S. government." *Id.* at 553.

That question was the focus of the district court's inquiry on remand, after Totten amended his complaint. The court again dismissed the action, noting that the amended complaint alleged only that "the allegedly false claims in this case were presented to and paid by Amtrak, not that the false claims were presented to any federal officer or employee." *United States ex rel. Totten v. Bombardier Corp.*, No. 98-0657, Mem. op. at 7 (D.D.C. Sept. 3, 2003). The district court recognized that 31 U.S.C. § 3729(c) defines "claim" under the Act to include claims made to a grantee if the Government provides all or part of the money to pay the claim, but noted that "Congress nevertheless did not remove the unambiguous language requiring presentment to the United States" in Section 3729(a)(1). *Id.* at 5. Totten now appeals, and the Government has filed briefs and argued as amicus curiae in support of Totten.[1]

## II.

### A. Amtrak is Not the Government

Totten — but not the Government — argues that the allegedly false claims in this case *were* presented to the Government, because Amtrak was a mixed-ownership government corporation prior to December 1997 and the Government has continued to hold all of Amtrak's preferred stock, and has provided sizable subsidies to Amtrak, since that date. Totten Br. at 6. This argument is unavailing.[2]

---

[1] The statute governing *qui tam* actions under the False Claims Act allows the Government to intervene in the district court and take over responsibility for conducting the litigation. *See* 31 U.S.C. § 3730(b)(2), (4)(A). In this case, the Government chose not to intervene; for its part, Amtrak has not brought any action against Bombardier or Envirovac for the fraud Totten alleges.

[2] It was also arguably not preserved for appeal, because it was made only in the most cursory fashion in the district court. We need not decide whether it was adequately preserved, because it was in any event preserved only to fail.

Even prior to 1997 — indeed, at all times since the company was created in 1971 — Amtrak's organic statute has flatly stated that the company "is not a department, agency, or instrumentality of the United States Government." 49 U.S.C. § 24301(a)(3); *see also Totten I*, 286 F.3d at 544. In its brief, the Government candidly concedes that "Congress has specified that Amtrak is not itself an agency of the Government." Amicus Br. at 10. And in a case involving the provision that is now Section 24301, the Supreme Court deemed the statute "assuredly dispositive of Amtrak's status as a Government entity for purposes of matters that are within Congress's control." *Lebron v. National R.R. Passenger Corp.*, 513 U.S. 374, 392 (1995); *see also Totten I*, 286 F.3d at 544–45 (citing *Lebron*). Totten offers no reason, and we can think of none, why False Claims Act coverage is not a matter "within Congress's control."

The case on which Totten relies, *Rainwater v. United States*, 356 U.S. 590 (1958), is clearly distinguishable. *Rainwater* held that the Commodity Credit Corporation was "part of 'the Government of the United States' for purposes of the False Claims Act," *id.* at 592, but as the Court noted, the statute in that case expressly provided that the Corporation *was* "an 'agency and instrumentality of the United States.'" *Id.* at 591 (quoting Commodity Credit Corporation Charter Act, Pub. L. No. 80-806, § 2, 62 Stat. 1070 (1948)). Amtrak's statute, of course, gives Amtrak the exact opposite status. Attempts to analogize the other facts in *Rainwater* — that all of the Commodity Credit Corporation's employees were employees of the U.S. Department of Agriculture, and that the entire budget of the Corporation came from the federal treasury, *see id.* — are similarly fruitless.

## B. Section 3729(a)(1) Requires Presentment to an Officer or Employee of the Government

1. Totten, now with the support of the Government, advances an alternative argument: that a claim submitted to Amtrak is *effectively* a claim presented to the Government. Thus Totten asserts that "the [False Claims Act] covers claims presented to grantees," Totten Br. at 21; *see also*

Reply Br. at 2, and relies on dicta from *United States ex rel. Yesudian v. Howard University*, 153 F.3d 731, 738 (D.C. Cir. 1998), which suggest that claims presented to grantees may be considered " 'effectively' presented to the United States" if the claims are paid with funds the grantee received from the Government. *See* Totten Br. at 13; *see also* Amicus Br. at 18 (quoting *Yesudian*).

Totten and the Government are unable to refute Envirovac's argument that their reading of the statute would "write the clear unambiguous language of Section 3729(a)(1) entirely out of the Act." Envirovac Br. at 9; *see also* Bombardier Br. at 10–11. Liability under Section 3729(a)(1) arises when any person "knowingly presents, or causes to be presented, *to an officer or employee of the United States Government* . . . a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(1) (emphasis added); Totten and the Government offer no plausible explanation for how presentment of a claim to Amtrak can satisfy the clear textual requirement that a claim be presented to a federal officer or employee. Instead, they shift to a textual argument of their own, arguing that a presentment requirement in Section 3729(a)(1) would be "inconsistent with the plain language of [Section] 3729(c)." Amicus Br. at 9; *see also* Reply Br. at 2.

Section 3729(c) defines a claim to include a request or demand for payment made to a grantee "if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse . . . [the] grantee . . . for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(c). A presentment requirement in Section 3729(a)(1), the argument goes, would mean that False Claims Act liability for claims submitted to grantees would attach only if the claims are presented for reimbursement, and thus would "render[ ] the first 'if' clause meaningless." Amicus Br. at 13.

Not at all. It is quite easy to square the language of Section 3729(c) — including *both* "if" clauses — with the presentment requirement in Section 3729(a)(1). The first "if" clause defines a claim to include claims submitted to grantees

if the Government "provides" any portion of the funds used to pay the claim. In a rhetorical sleight of hand, the Government urges that this clause must reach any claim where the money "*has already been* or is being provided by the Federal Government." *Id.* (emphasis added). Such a reading equates the present-tense "provides" in the statute with the past-tense "has provided" in the argument — and thereby runs afoul of the Supreme Court's admonition that "Congress' use of a verb tense is significant in construing statutes." *United States v. Wilson*, 503 U.S. 329, 333 (1992).

The word "provides" in Section 3729(c), when appropriately limited to the present tense, squares neatly with a presentment requirement. False Claims Act liability will attach if the Government *provides* the funds to the grantee *upon presentment of a claim* to the Government. Liability will also attach if, after the grantee presents the claim, the Government *provides* the funds directly to the claimant: the first "if" clause of subsection (c) — unlike the second — does not circumscribe the set of possible recipients of the federal funds. And under the second "if" clause, liability will attach if the Government — again, upon presentment of the claim — reimburses the grantee for funds that the grantee has already disbursed to the claimant. Nothing about the language of subsection (c) requires ignoring that of subsection (a)(1) to make sense of the statute.[3]

---

[3] Although the dissent ultimately does not challenge our reading of subsection (a)(1), it does dispute this explanation of how (a)(1) and (c) can be read together, in the course of pressing its theory that (a)*(2)* does not require presentment. *See post* at 15–16. According to the dissent, we are wrong to say that "False Claims Act liability will attach if the Government provides the funds to the grantee *upon presentment of a claim* to the Government," because the italicized language does not appear in subsection (c). *See id.* at 16. Of course it does not: our point was not to suggest that subsection (c) itself contains a presentment requirement — it is, after all, a definitional rather than a liability provision — but instead to respond to the erroneous contention that a presentment requirement was somehow inconsistent with the definition of a claim in subsection (c).

Indeed, Totten and the United States never connect the dots in their argument based on subsection (c). Whatever that argument may show about what constitutes a "claim," it does not respond to the plain requirement of subsection (a)(1) that, to be actionable under the False Claims Act, any such claim must be presented to an officer or employee of the United States Government. As Judge Randolph noted in *Totten I*, it is clear on the face of the statute that "no matter how 'claim' is defined, subsection (a)(1) requires the alleged false claimant to present it (or cause it to be presented) to a federal officer or employee." 286 F.3d at 554 (Randolph, J., concurring).

2. In *Yesudian*, the court considered the present question, but expressly concluded that it "need not resolve that question today." 153 F.3d at 739. That was because the issue in *Yesudian* was not liability under the False Claims Act for false claims, but whether an employer retaliated against an employee for filing a *qui tam* action under the Act. Such retaliation, the *Yesudian* court concluded, could be shown without establishing that the *qui tam* plaintiff would have prevailed in his suit. *Id.*; *see Totten I*, 286 F.3d at 546 ("Neither this court nor the Supreme Court has definitively explicated the complex relationship between the definition clause in § 3729(c) and the presentment clause in § 3729(a)(1);" *Yesudian* "declined to answer" the question). The *Yesudian* court noted that the statutory language could be read to require presentment to the United States, but also surmised — relying on the legislative history of the 1986 amendments to the False Claims Act, *see* 153 F.3d at 737–39 — that it was "also possible to read the language to cover claims presented to grantees, but 'effectively' presented to the United States because the payment comes out of funds the federal government gave the grantee," *id.* at 738. Now that the question is which interpretation is correct, as opposed to whether either is arguable, we adhere to the plain language of the statute, rather than invoke the legislative history to embrace a reading at odds with the statutory text.

As an initial matter, the Supreme Court reiterated as recently as this past Term that resort to legislative history is

not appropriate in construing plain statutory language. "[W]hen the statute's language is plain, the sole function of the courts — at least where the disposition required by the text is not absurd — is to enforce it according to its terms." *Lamie v. United States Tr.*, 124 S. Ct. 1023, 1030 (2004) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)); *see also Ratzlaf v. United States*, 510 U.S. 135, 147–48 (1994) (courts should "not resort to legislative history to cloud a statutory text that is clear"); *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 808–09 n.3 (1989) ("Legislative history is irrelevant to the interpretation of an unambiguous statute.").

Totten and the United States do not suggest that the language of Section 3729(a)(1) is somehow not plain; they merely argue that a plain language reading would yield results at variance with the legislative history of the 1986 amendments. Given that we are dealing with plain language, however, there is no way to "construe" the language so that it is satisfied when claims are presented to Amtrak. We could say that submitting a claim to Amtrak is "just like" or "equivalent to" or "effectively" submitting a claim to "an officer or employee of the United States Government," and that subsection (a)(1) is therefore satisfied, but those would just be different ways of saying that we are not going to read (a)(1) as written by Congress. "There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted." *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625 (1978). Totten and the United States imply that the asserted variance with the legislative history empowers us to ignore the plain language of subsection (a)(1), but such extraordinary power is limited to the situation in which adherence to the plain text leads to an "absurd" result, *see, e.g.*, *Lamie*, 124 S. Ct. at 1030, and no one has suggested that to be the case here.

None of this is to gainsay the argument based on the legislative history, ably advanced (and suitably, given the nature of the question presented) in *Yesudian*. But there would be no need for a rule — or repeated admonition from

the Supreme Court — that there should be no resort to legislative history when language is plain and does not lead to an absurd result, if the rule did not apply precisely when plain language and legislative history may seem to point in opposite directions.

Totten and the United States argue that adhering to the plain language would leave intact opinions Congress intended to overrule in the 1986 amendments, but that is not clear with respect to the decision that the Senate Judiciary Committee most clearly intended to overrule — *United States v. Azzarelli Construction Co.*, 647 F.2d 757 (7th Cir. 1981). *See* S. REP. NO. 99-345, at 22 (1986) (S. REP.). *Azzarelli* held that because the federal funds at issue were part of a "fixed and determinate yearly contribution" rather than an "open-ended federal expenditure program," the False Claims Act did not apply. *Azzarelli*, 647 F.2d at 761; *see* S. REP. at 15, 22 (describing *Azzarelli*'s holding). Under our reading of subsections (a) and (c) of Section 3729, the fixed nature of a federal grant would be no bar to a claimant's liability; such liability would turn on whether the Government "provides" the funds — in a fixed or variable amount — upon presentment of a claim to the Government. In fact, this presentment requirement was satisfied in *Azzarelli*: the payment scheme clearly required the state to present to the Government claims for reimbursement after it paid the contractors' fraudulent claims. *See* 647 F.2d at 760.

Totten and the United States may be on firmer ground with respect to some of the other cases with which the Committee expressed displeasure. But our point is not to debate the legislative history; rather, "[t]hese uncertainties illustrate the difficulty of relying on legislative history . . . and the advantage of our determination to rest our holding on the statutory text." *Lamie*, 124 S. Ct. at 1034. And whatever degree of confidence about congressional purpose one derives from the legislative history, that purpose must find expression "within the permissible limits of the language" before it can be given effect. HENRY J. FRIENDLY, BENCHMARKS 216 (1967).

At its most broad, the legislative history of the 1986 amendments declares that "a false claim is actionable although the claims or false statements were made to a party other than the Government, if the payment thereon would ultimately result in a loss to the United States." S. REP. at 10. Even if the Committee "intended the concept of loss to the United States to be considered broadly," *Yesudian*, 153 F.3d at 739, "no legislation pursues its purposes at all costs," *Student Loan Mktg. Ass'n v. Riley*, 104 F.3d 397, 408 (D.C. Cir. 1997) (quoting *Rodriguez v. United States*, 480 U.S. 522, 525–26 (1987)) (internal quotation marks omitted). The task of statutory interpretation cannot be reduced to a mechanical choice in which the interpretation that would advance the statute's general purposes to a greater extent must always prevail over one that would both advance the same ends — though to a slightly lesser extent — and have fewer drawbacks. *See BP West Coast Prods., LLC v. FERC*, 374 F.3d 1263, 1292–93 (D.C. Cir. 2004) (statutory objective of providing tax incentives for certain pipeline owners does not mean all interpretive questions should be resolved in favor of whatever results in most favorable tax treatment for such owners) (citing *Michigan v. EPA*, 268 F.3d 1075, 1084 (D.C. Cir. 2001)). Nothing in the legislative history of the 1986 amendments suggests that the present False Claims Act is, to borrow a phrase from another context, "the product of monomaniacs." *Student Loan Mktg. Ass'n*, 104 F.3d at 408.

What is more, if the overriding intent of Congress were in fact to delete the requirement that claims be presented to a Government officer or employee, Congress could readily have done just that — amend subsection (a)(1) to provide that claims be presented to the Government *or a grantee or recipient of Government funds*. But Congress did not touch (a)(1) at all in 1986. Congress proceeded quite elliptically if its intent were to eliminate the requirement of presentment to the Government in the case of claims against grantees.

In the final analysis, we can remain agnostic on the question whether Congress intentionally left the presentment requirement in Section 3729(a)(1) or simply forgot to take it out. The suggestion that Congress may have "dropped a

stitch," *Yesudian*, 153 F.3d at 738, is not enough to permit us to ignore the statutory text. The Supreme Court reminded us in the Term just ended that " '[i]t is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think . . . is the preferred result.' " *Lamie*, 124 S. Ct. at 1034 (quoting *United States v. Granderson*, 511 U.S. 39, 68 (1994) (Kennedy, J., concurring)) (ellipsis in *Lamie*); *see also Consolidated Rail Corp. v. United States*, 896 F.2d 574, 579 (D.C. Cir. 1990) (courts are generally not "free to 'correct' what they believe to be congressional oversights by construing unambiguous statutes to the contrary of their plain meaning").

There are good reasons for this rule; a court's attempt to correct a statute can often create new problems. At least three complications could flow from the proposed correction. First, as Judge Randolph observed in *Totten I*, extending False Claims Act liability here seems to result in quadruple liability for false claimants: a grantee could presumably bring suit and obtain a recovery for itself, in addition to the treble damages the Government and the relator divvy up under the Act. *See* 286 F.3d at 554 (Randolph, J., concurring). Totten's response — "So be it," Opposition to Mots. to Dismiss at 30 — is candid but not reassuring.

Second, authorizing suit on behalf of an entity to which a claim was not presented raises complicated questions in applying the statute's scienter requirement: if the claimant has told the grantee pertinent facts that would, in the absence of such disclosure, make a claim fraudulent, it seems that the claimant has not "knowingly" presented a false claim *to the grantee*. *See, e.g.*, *United States ex rel. Durcholz v. FKW Inc.*, 189 F.3d 542, 545 (7th Cir. 1999) ("[T]he government's knowledge effectively negates the fraud or falsity required by the [Act].").  *But see United States ex rel. Hagood v. Sonoma County Water Agency*, 929 F.2d 1416, 1421 (9th Cir. 1991) ("The requisite intent is the knowing presentation of what is known to be false. That the relevant government officials know of the falsity is not in itself a defense."). It is unclear how to apply the "knowingly presents" element when the Government itself (or a relator) brings suit for claims made to

a grantee, if there is no longer any requirement of present-ment to the Government.

Third, an "effective" presentment approach would make the potential reach of the Act almost boundless: for example, liability could attach for any false claim made to any college or university, so long as the institution has received some federal grants — as most of them do. The *Yesudian* court recognized this concern:

> It may be that this reading ... should not apply to all grantees. It may not be appropriate, for example, where the grantee's federal funds are an insubstantial percent-age of its total budget, where there is little likelihood that any of a defendant's money actually came from the federal grant, or where there is little continuing contact between the grantee and the government once the grant is made.

153 F.3d at 738. Such an imprecise line of demarcation, however, seems little more than a prescription for even more collateral litigation under the False Claims Act.

Our point is not that these problems would inevitably arise. It is instead that the prospect of them, and others we have not anticipated, reminds us that our job is reading statutes as written, not rewriting them "in an effort to achieve that which Congress is perceived to have failed to do." *United States v. Locke*, 471 U.S. 84, 95 (1985).

### III.

#### A.

Our dissenting colleague prefers to sidestep the question whether Section 3729(a)(1) requires presentment and rest his decision instead on subsection (a)(2). That provision is direct-ed at those who make false statements to get the Government to pay false claims, and has no express requirement of presentment to an officer or employee of the United States Government. None of the parties argued that subsection (a)(2) could provide the grounds for resolving this case during the six years the case was pending before reaching us for oral

argument: not in the first round of litigation that included the appeal to this court in *Totten I*, not in the district court below on remand, and not in the initial briefing on this appeal. *See* Totten Suppl. Br. at 1 ("Neither side had addressed [the possible application of subsection (a)(2) instead of (a)(1)] in the court below or in the briefs submitted to this Court.").

Ordinarily, arguments that parties do not make on appeal are deemed to have been waived. *See, e.g.*, *Ark Las Vegas Rest. Corp. v. NLRB*, 334 F.3d 99, 108 n.4 (D.C. Cir. 2003) (argument petitioner raised for first time at oral argument is "waived because it was not raised in [petitioner's] briefs"); *Narragansett Indian Tribe v. National Indian Gaming Comm'n*, 158 F.3d 1335, 1338 (D.C. Cir. 1998) ("[W]e ordinarily do not entertain arguments not raised by parties"); *District of Columbia v. Air Florida, Inc.*, 750 F.2d 1077, 1084 (D.C. Cir. 1984) (under "well settled" rule, "issues and legal theories not asserted at the District Court level ordinarily will not be heard on appeal"). The court has authority to remedy errors *sua sponte* in "exceptional circumstances" — when they "seriously affect the fairness, integrity, or public reputation of judicial proceedings," *United States v. TDC Mgmt. Corp.*, 288 F.3d 421, 425 (D.C. Cir. 2002) (quotation omitted) — but no one has suggested that this is such a case. A party's failure to pursue one of several available lines of argument is hardly an "error" of the sort that would warrant exercising our narrowly circumscribed remedial authority.

We regularly attempt to avoid *constitutional* questions by resting decision on a statutory basis, *see Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 345–48 (1936), but there is no comparable doctrine that would favor avoiding one question of statutory interpretation — the one litigated by the parties that was the basis for decision below — by proposing, and then answering, a different one not posed by the parties or addressed by the district court. Even if such a "statutory avoidance" doctrine existed, it is difficult to see why we would invoke it in this case: the proper construction of Section

3729(a)(2) seems harder, not easier, than that of Section 3729(a)(1).[4]

The dissent chides us for responding to its analysis of (a)(2), but a response is appropriate given the dissent's determination to embrace a reading of (a)(2) that would render the plain language reading of (a)(1) largely meaningless. In short, we would prefer not to reach an issue the parties did not in the six previous years of litigation, but now that the dissent insists on putting it on the table, we are obliged to explain why the proper resolution of that issue does not undermine our reading of (a)(1) — the issue the parties did raise, and which was decided below.

### B.

The dissent's effort to avoid deciding the presentment issue by looking to Section 3729(a)(2) is ultimately unavailing — which may explain why the approach was never suggested by appellant, appellees, amicus, or the district court. Making false records or statements to get a false claim paid or approved by Amtrak is not making or using "a false record or statement to get a false or fraudulent claim paid or approved *by the Government*," 31 U.S.C. § 3729(a)(2) (emphasis added).

We are apparently in agreement with the dissent that Amtrak is not "the Government" for False Claims Act purposes. *See supra* at 4–5. But in concluding that Section 3729(a)(2) reaches the alleged false statements in this case —

---

[4] The cases the dissent cites to rebut this point, *see post* at 3 & n.3, are far afield. Resting on (a)(1) would not implicate an antecedent but unaddressed issue, as in *United States National Bank of Oregon vs. Independent Insurance Agents of America*, 508 U.S. 439, 447 (1993), nor is the (a)(2) issue one that has arisen because of an intervening decision of this court, as in *Acree v. Republic of Iraq*, 370 F.3d 41, 58 (D.C. Cir. 2004). Finally, in *Cicippio-Puleo v. Islamic Republic of Iran*, 353 F.3d 1024, 1030 (D.C. Cir. 2004), a sovereign defendant had failed to appear altogether. The *Cicippio* court's decision to order briefing on certain questions *sua sponte* has no relevance to this case, in which Totten has litigated vigorously — but not at all on (a)(2).

statements that induced *Amtrak* to pay false claims — the dissent finds that payment by Amtrak is payment "by the Government" because some of the funds came from a federal grant to Amtrak. As support for this reading, the dissent points to Section 3729(c), which, as we have seen, provides that the term "claim" includes requests made to grantees and other recipients "if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse [the recipient] for any portion of the money or property." *Id.* § 3729(c). In short, the dissent believes that Section 3729(c) collapses the distinction between the Government and its grantees where liability under Section 3729(a)(2) — but apparently not under Section 3729(a)(1) — is concerned. Totten and the Government advanced the same view, when prodded by our order requesting supplemental briefing on the (a)(2) question. Totten Suppl. Br. at 13 ("The import of Section 3729(c) is that it broadens who constitutes the Government under the False Claims Act."); Amicus Suppl. Br. at 12–13 ("[A] claim is paid 'by the Government' either if the government pays it directly or if the money is disbursed by a third-party funding recipient who receives from the government all or part of the funding for the payment").

This reading has a fatal flaw: it yields exactly the same meaning that would result if Section 3729(a)(2) did not contain the words "by the Government" at all. If Congress had intended to predicate liability under subsection (a)(2) on payment or approval *either* by the Government itself *or* by a grantee using federal funds, then a reference to false records or statements made "to get a false or fraudulent claim paid or approved" would have been enough. That is exactly what subsection (a)(2) provided *before* the 1986 amendments. By adding subsection (c) in 1986 to provide that "claim" included claims against a grantee or recipient, Congress arguably could have achieved the result for which Totten and the Government contend simply by leaving (a)(2) untouched. Congress did not do that. At the same time it added subsection (c), Congress added the words "by the Government" to (a)(2). False Claims Amendments Act of 1986, Pub.

L. No. 99-562, § 2(3), (7), 100 Stat. 3153, 3153–54. Notably, Congress did not say "by the Government or a grantee, contractor, or other recipient as provided in subsection (c) of this section."[5]

It is, of course, a "cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *Alaska Dep't of Envtl. Conservation v. EPA*, 124 S. Ct. 983, 1002 n.13 (2004) (quotation omitted); *see also Hibbs v. Winn*, 124 S. Ct. 2276, 2286 (2004) ("rule against superfluities" bars a reading that would have one of several words in statutory provision "do all the necessary work"); *Duncan v. Walker*, 533 U.S. 167, 174 (2001). Moreover, "[w]hen Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." *Stone v. INS*, 514 U.S. 386, 397 (1995). The intended effect of adding "by the Government" at the same time as subsection (c) is fairly obvious: Congress was referring back to the presentment requirement of Section 3729(a)(1). And in so doing, Congress was reinforcing — rather than abandoning — the distinction between the Government and its grantees that might otherwise have been blurred by the addition of Section 3729(c).[6]

---

[5] The dissent purports to make a plain language argument, but has to alter the statutory words to make its point, asserting that "paid by the Government" means "paid with government money." *See post* at 6–7. The statute does not talk of "government money" or, the term the dissent employs elsewhere, "federal monies." It speaks of claims "presented . . . to an officer or employee of the United States Government . . . for payment or approval" and claims "paid or approved by the Government."

[6] The dissent's suggestion that "by the Government" was added to clarify that the Act reaches false claims only where the Government "directly or indirectly provides the funds and suffers the loss," *post* at 9 n.8, does not hold up; the definition of "claim" already contains that limitation. *See* 31 U.S.C. § 3729(c). The dissent is unwilling to give the addition of "by the Government" to (a)(2) any weight because it cannot find a statement in any committee report explaining what Congress intended to accomplish by that amend-

The parallel structure of (a)(1) and (a)(2) strongly supports this interpretation. Subsection (a)(1) refers to presenting claims to the Government for "payment or approval;" subsection (a)(2) to making false statements to get claims "paid or approved by the Government." As it turns out, that parallel structure is no accident. Prior to 1982, the liability provisions of the False Claims Act were contained in one unwieldy sentence that had survived, with only minor modifications, since the Act's enactment in 1863:

> Any person . . . who shall make or cause to be made, or present or cause to be presented, for payment or approval, to or by any person or officer in the civil, military, or naval service of the United States, any claim upon or against the Government of the United States, . . . knowing such claim to be false, fictitious, or fraudulent, or who, for the purpose of obtaining or aiding to obtain the payment or approval of *such claim*, makes, uses, or causes to be made or used, any false bill, receipt, voucher, roll, account, claim, certificate, affidavit, or deposition, knowing the same to contain any fraudulent or fictitious statement or entry . . . shall forfeit and pay to the United States the sum of $2,000, and, in addition, double the amount of damages which the United States may have sustained . . . .

31 U.S.C. § 231 (1976) (emphasis added).

In 1982, Congress undertook a comprehensive revision of Title 31 of the U.S. Code and substituted "simple language . . . for awkward and obsolete terms." H.R. REP. No. 97-651, at 1 (1982). As part of this revision, the single interminable sentence constituting the False Claims Act (of which only a

---

ment. *See post* at 9. But statutory language cannot be slighted simply because it is not addressed in legislative history. *See, e.g.*, *New York v. FERC*, 535 U.S. 1, 20–21 (2002). The case cited by the dissent — *Cook County, Illinois v. United States ex rel. Chandler*, 538 U.S. 119 (2003) — rejected an argument that Congress accomplished a significant *change* without discussion. The presentment requirement, however, has been in the statute for 140 years. The addition of "by the Government" did not change but confirmed that.

19

small portion is quoted above) was divided into the numbered subsections of Section 3729(a). Congress made it extremely clear, however, that the bill "ma[de] no substantive change in the law." *Id.* at 3; *see also id.* at 1 ("The purpose of the bill is to restate in comprehensive form, without substantive change, . . . laws related to money and finance"); *id.* at 2 ("In making changes in the language, precautions have been taken against making substantive changes in the law.").

The present Section 3729(a)(2), therefore, is the direct descendant of a clause that could only be read in conjunction with what is now Section 3729(a)(1): the reference to "such claim" was a shorthand reference to the claim already identified in the current subsection (a)(1) — that is, a claim that would be presented or caused to be presented to the United States.[7] The legislative history even explains why the word "such" disappeared from the statute: Congress removed it in light of the general purpose of the 1982 revision — to make the statute more readable. *See id.* at 3 ("The word 'such' is [no longer] used as a demonstrative adjective.").

The dissent reads the 1982 revision to effect a significant substantive change. Rather than accepting that "paid or approved" in subsection (a)(2) is an invocation of "payment or approval" in (a)(1), the dissent seizes onto the absence of any discussion of presentment in subsection (a)(2) and concludes that Congress had a wholly different type of liability in mind — one in which presentment of a claim is irrelevant, so long as a defendant happens to have made a false record or statement. The various subsections of Section 3729(a) must of course be read disjunctively, because the word "or" ap-

---

[7] The dissent offers a different interpretation of "such claim," arguing that it refers to a "claim upon or against the Government of the United States" rather than to a claim presented to the United States. *See post* at 12–13 & n.11. Within the framework of the pre–1982 version of the statute, we fail to see how the dissent's reading is any different from our own: a claim could not be upon or against the Government unless it was presented to the Government. The parallel between presented to the Government for payment or approval and paid or approved by the Government confirms the point.

pears between subsections (a)(6) and (a)(7), but that word is not a license to ignore the provenance of subsection (a)(2) in construing what "paid or approved by the Government" in that subsection means. *See* 2A NORMAN J. SINGER, STATUTES AND STATUTORY CONSTRUCTION § 46:05, at 165–66 (6th ed. 2000) ("[A] statutory subsection may not be considered in a vacuum . . .; courts should not rely too heavily upon characterizations such as 'disjunctive' ") (footnote omitted).

To the extent that the Government buttresses its reading of Section 3729(a)(2) with citations to the legislative history of the 1986 amendments, *see, e.g.*, Amicus Suppl. Br. at 13, such reliance is gravely misplaced: the Senate report was based on a version of the bill *that did not yet include the provision adding the words "by the Government" to subsection (a)(2)*. *See* S. REP. at 39. It thus makes little sense to protest that giving effect to those restrictive words would run counter to some of the report's sweeping explanations of the Senate Judiciary Committee's intent.

The proposition that subsection (a)(2) harkens back to (a)(1), and that the latter requires presentment, is supported in scholarly commentary on the False Claims Act. A leading treatise on the False Claims Act states that "[t]he three requirements of Section [3729](a)(1)" — including the require-ment "that a claim be presented to the United States" — are "still applicable" to Section 3729(a)(2). 1 JOHN T. BOESE, CIVIL FALSE CLAIMS AND QUI TAM ACTIONS § 2.01[B], at 2-21 (2d ed. Supp. 2004-1). The dissent's contrary conclusion — that subsection (a)(2) does not require any presentment that may be required under subsection (a)(1) — has tellingly little support.

The dissent's reading of (a)(2) would make the presentment requirement in (a)(1), which the dissent does not challenge head-on, largely meaningless. In most cases false records or statements are made or used to get false claims paid or approved. If the dissent's view prevailed, the plain language requirement in (a)(1) that claims be presented to an officer or employee of the Government would only trip up those foolish enough to rely on (a)(1) rather than (a)(2) — and even they

might find a court willing to excuse their omission. The dissent candidly views this as all well and good — a way of "reconciling § 3729(a) as a whole with § 3729(c) and the legislative history," *post* at 2 — but it is not our task to find ways of circumventing plain statutory language.[8] Allowing (a)(2) to swallow (a)(1) is particularly egregious, since it seems clear that (a)(2) is complementary to (a)(1), designed to prevent those who make false records or statements to get claims paid or approved from escaping liability solely on the ground that they did not *themselves* present a claim for payment or approval. *See United States ex. rel. Harris v. Bernad*, 275 F. Supp. 2d 1, 6 (D.D.C. 2003) ("the main purpose of section 3729(a)(2) is to remove any defense that the defendants themselves did not submit false claims to the government") (citing BOESE, *supra*, at § 2.01[B]). This is presumably why (a)(2) was not argued by the parties throughout this litigation. To the extent the dissent's reading of (a)(2) does not completely swallow (a)(1), it leads to an anomalous result: a defendant who makes a false record to help someone else get a false claim paid or approved by a grantee would be covered by the Act, but a defendant who actually presents a false claim to the grantee for payment or approval would not be.

The dissent seems to recognize that a false record cannot be said to be used to get the Government to "approve" a claim if the Government has no role to play because there is no presentment, but contends that the situation is very different under the payment prong of (a)(2). *See post* at 5–6. But under that prong as well the false record does not prompt any action "by the Government" under the dissent's

---

[8] The dissent asserts that it is not guilty of this transgression because there is no plain language presentment requirement in (a)(2). *See post* at 2 n.2. This misses the point: there is a plain language presentment requirement in (a)(1) and the dissent's reading of (a)(2) would circumvent that. Elsewhere the dissent recognizes that "words of a statute must be read in context and with a view to their place in the overall statutory scheme." *See post* at 14 (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)).

view, but only by the grantee or contractor. The dissent hinges coverage on the presence of funds that can trace their genealogy to the Government, without explaining the limits of this non-statutory "federal monies" concept. If, as was actually largely the case here, *see* Decl. of Carol J. Dillon; Decl. of Brian Adam, Amtrak pays Bombardier with proceeds from a Canadian Export Development Corporation loan and an Export Development Bank loan, and then repays the loans with money from its capital budget, it is not clear that Bombardier's claims — as opposed to those of the Export Corporation and Bank for repayment — are satisfied out of federally provided funds. And it remains unclear whether "federal monies," which apparently retain that character under the dissent's view even though no further government role is involved, are still "federal monies" when passed along to subgrantees or subcontractors, employees and suppliers of subgrantees and subcontractors, and so on.[9]

* * *

The dissent literally begins and ends with legislative history. *See post* at 1, 22–23. We will end as we began, too, but with the statutory language: Section 3729(a)(1) imposes liability on anyone who "knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval." That was not done here; claims were presented only to Amtrak for payment or approval, and Amtrak is not the Government. Section 3729(a)(2) imposes liability on any-

---

[9] The policy concern that the Government invokes and that the dissent repeats — that requiring presentment will "withdraw[ ] False Claims Act protection" from a "broad swath of false claims," *see post* at 23 (quoting U.S. Br. at 9) — rather plainly begs the question. In addition, the Government is of course free to structure its grants in such a way as to require presentment and thereby trigger coverage under the False Claims Act, and often does so. *See, e.g.*, *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 543 (1943) ("It was a prerequisite to respondents' payment by the [grantee] that . . . estimates be filed, transmitted to, and approved by, the [Government] authorities.").

one who makes a false record or statement "to get a false or fraudulent claim paid or approved by the Government." That too was not done here; the records were made to get claims paid or approved by Amtrak, and Amtrak is not the Government.

The judgment of the district court is affirmed.

1

GARLAND, *Circuit Judge*, dissenting: The False Claims Act, "adopted in 1863 and signed into law by President Abraham Lincoln in order to combat rampant fraud in Civil War defense contracts," S. Rep. No. 99-345, at 8 (1986), is the "Government's primary litigative tool for combating fraud," *id.* at 2. Today, the court adopts an interpretation that, the government warns, leaves "vast sums of federal monies" without False Claims Act protection. Oral Arg. Tr. at 3. Under the court's interpretation, the government[1] cannot recover against a contractor that obtains money by presenting a false claim to a federal grantee — even if every penny paid to the contractor comes out of an account comprised wholly of federal funds — unless the grantee "re-presents" that false claim to a federal employee. Although Amtrak receives billions of dollars in federal funds that it uses to pay contractor invoices, because it does not (and is not required to) re-present those invoices to the federal government, the court's ruling immunizes those who defraud even that government-funded corporation from False Claims Act liability.

My colleagues concede that 31 U.S.C. § 3729(a)(2) "has no express requirement of presentment to an officer or employee of the United States Government." Op. at 13. The court's interpretation of that subsection as *requiring* presentment is thus inconsistent with its plain text — as well as with the statutory definition of "claim" contained in § 3729(c). Moreover, the court's interpretation is not just inconsistent, but irreconcilable, with the legislative history of the 1986 Amendments to the False Claims Act. *See* False Claims Amendments Act of 1986, Pub. L. No. 99-562 § 2(c), 100 Stat. 3153 (Oct. 27, 1986) (hereinafter 1986 Amendments). The court marches on nonetheless, surrounding itself on all sides with "canons" of statutory construction, which serve here as "cannons" of statutory destruction. Although I have no quarrel

---

[1] Although in the instant case the plaintiff is a private "relator" suing in the name of the government, *see* 31 U.S.C. § 3730(b), the statute authorizes the government to sue in its own name or to take over a relator's suit and conduct the action itself, *see id.* § 3730(b)(2), (b)(4)(A). The statute's substantive provisions are the same regardless of whether the government or a relator prosecutes the action.

with the canons the court has chosen, properly deployed they do not support the position it has taken in this case.

## I

I begin with a preliminary matter: I am perplexed by the court's long prologue protesting the propriety of deciding the meaning of § 3729(a)(2), followed immediately by its decision on that very issue. *See* Op. at Part III.A.

First, the rationale for exploring the meaning of subsection (a)(2) is straightforward. As discussed in *United States ex rel. Yesudian v. Howard University*, the conclusion that liability under § 3729(a)(1) requires that a false claim be presented to the government rather than a grantee is difficult to reconcile with § 3729(c), and perhaps impossible to reconcile with the Act's legislative history. 153 F.3d 731, 737-38 (D.C. Cir. 1998); *see infra* Parts III, IV. Nonetheless, subsection (a)(1)'s language renders this reading "possible," *Yesudian*, 153 F.3d at 738, and perhaps would not alone warrant a dissent. As discussed below, however, what is a plausible reading of subsection (a)(1) — given its "presents, or causes to be presented" language — is not plausible for subsection (a)(2), which contains no such language.

Moreover, even if subsection (a)(1) were read as imposing a presentment requirement, reading subsection (a)(2) as *not also* imposing such a requirement goes a long way toward reconciling § 3729(a) as a whole with § 3729(c) and the legislative history that indicates Congress intended to reach false claims made to grantees.[2] Hence, there is good reason to interpret both subsections (a)(1) and (a)(2) at the same time, because the reasonableness of the interpretation of the former may rest on the meaning assigned to the latter.

Second, there is no procedural impropriety in deciding the meaning of subsection (a)(2) here. The plaintiff's complaint — which the district court dismissed on the plead-

---

[2] As discussed below, achieving such a reconciliation would not "circumvent[ ] plain statutory language," Op. at 21, as there is no language of presentment — "plain" or otherwise — in § 3729(a)(2).

ings — was not limited to subsection (a)(1), but rather asserted liability under "31 U.S.C. § 3729" in its entirety. Am. Compl. ¶¶ 11, 63, 107. His district court pleadings were more specific, charging a violation of "§§ 3729(a)(1) - (a)(3)." Pl.'s Opp'n to Mots. to Dismiss, at 2. Indeed, our own prior decision in this case noted that "the sections relevant here" proscribe (inter alia) " 'false records or statements' used to induce [false] claims, *see* § 3729(a)(2)." *United States ex rel. Totten v. Bombardier*, 286 F.3d 542, 551 (D.C. Cir. 2002) (hereinafter *Totten I*).

Although initially the plaintiff did not separately address the meaning of subsection (a)(2), he did argue that the False Claims Act (FCA) does not contain a presentment requirement. *See* Appellant's Br. at 5, 11-18, 21; Pl.'s Opp'n at 25-30. After oral argument in this court, we ordered supplemental briefing specifically "addressing the application of 31 U.S.C. § 3729(a)(2) to this case." Order (Apr. 20, 2004) (per curiam). The issue has now been fully briefed, removing the fairness concerns that ordinarily militate against entertaining arguments not initially presented. *See, e.g., Corson & Gruman Co. v. NLRB*, 899 F.2d 47, 50 n.4 (D.C. Cir. 1990) ("We require petitioners and appellants to raise all of their arguments in the opening brief to prevent 'sandbagging' of appellees and respondents and to provide opposing counsel the chance to respond."). There is, therefore, no impediment to our consideration of the meaning of subsection (a)(2).[3]

Finally, my colleagues simply "protest too much." WILLIAM SHAKESPEARE, HAMLET, act III, sc. 2. No one has compelled

---

[3] *See United States Nat'l Bank of Oregon v. Independent Ins. Agents of Am.*, 508 U.S. 439, 445-48 (1993) (holding that this court had authority, after ordering supplemental briefing, to decide the validity of a statutory section despite the parties' failure to dispute it); *Acree v. Republic of Iraq*, 370 F.3d 41, 48, 58 (D.C. Cir. 2004) (determining the validity of a cause of action, an issue not addressed by the parties, after advising the parties that it would be addressed at oral argument); *Cicippio-Puleo v. Islamic Republic of Iran*, 353 F.3d 1024, 1030 (D.C. Cir. 2004) (considering an issue not raised by the parties after giving them an opportunity to submit supplemental briefing).

them to address this issue. If they truly thought that determining the meaning of subsection (a)(2) were somehow inappropriate, they could have resisted the temptation and left the issue undecided.

Having dispensed with these preliminaries, I now proceed directly to the question of whether liability under § 3729(a)(2) of the False Claims Act requires presentment (or re-presentment) of a claim to a government employee, rather than to a grantee like Amtrak. Part II discusses the text of subsection (a)(2), while Part III addresses the related text of subsection (c). Part IV considers the legislative history of the 1986 Amendments, and Part V reviews the various policy arguments my colleagues advance in support of their position.

## II

"The starting point in discerning congressional intent is," of course, "the existing statutory text." *Lamie v. United States Trustee*, 124 S. Ct. 1023, 1030 (2004). Subsection (a)(2) imposes liability on any person who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government." 31 U.S.C. § 3729(a)(2); *see id.* § 3729(c) (defining "claim" as, inter alia, "any request . . . for money . . . which is made to a . . . grantee . . . if the United States Government provides any portion of the money . . . which is requested"). As charged in the complaint, defendants Envirovac and Bombardier made false statements in order to get false claims paid with government money. Accordingly, defendants' conduct appears to fall within the proscription of subsection (a)(2).

## A

The court's textual response to this argument is that the defendants' conduct does not fall within subsection (a)(2) because the defendants presented their false claims to Amtrak rather than to a government employee. It is true that a different subsection — (a)(1) — does contain presentment language. *See* 31 U.S.C. § 3729(a)(1) (imposing liability on

anyone who "knowingly presents or causes to be presented, to an officer or employee of the United States Government" a false or fraudulent claim). Indeed, it is upon that language that the court bases its conclusion that presentment is required for liability under subsection (a)(1). Op. at 2, 11-12. As already noted, however, the court concedes that subsection (a)(2) contains "no express requirement of presentment to an officer or employee of the United States Government." *Id.* at 13. And the absence of presentment language in (a)(2), coupled with its presence in (a)(1), cannot help but call to mind a traditional canon of construction: "[W]hen Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452 (2002) (internal quotation marks omitted); *see Russello v. United States*, 464 U.S. 16, 23 (1983) ("We refrain from concluding . . . that the differing language in the two subsections has the same meaning in each.").[4]

Lacking any reference to presentment in subsection (a)(2), the court contends that the words "by the Government" have the same effect. But if Congress had meant the same thing, it would have said the same thing. *See id.* The court might yet have an argument if subsection (a)(2) were limited to false claims "approved" by the government. But the subsection's

---

[4] The court also finds support for its presentment theory in what it calls the "parallel structure" of subsections (a)(1) and (a)(2): "Subsection (a)(1) refers to presenting claims to the government for 'payment or approval;' subsection (a)(2) to making false statements to get claims 'paid or approved by the Government.'" Op. at 18. But these two subsections are not "parallel" at all. Instead, they are quite distinct, imposing liability on different kinds of fraud: the first captures the person "who . . . *presents* . . . to an . . . employee of the United States Government . . . a false . . . claim for payment or approval"; the second catches the one "who . . . *makes* . . . a false . . . statement to get a false . . . claim paid or approved by the Government." 31 U.S.C. § 3729(a)(1), (2). The fact that both subsections require some form of payment or approval does not mean that they both require presentment to a government official.

requirement is that the claim be "paid *or* approved by the Government." 31 U.S.C. § 3729(a)(2) (emphasis added). And as the court recognizes, we should endeavor to construe statutes so that no "word shall be superfluous." Op. at 17 (quoting *Alaska Dep't of Envtl. Conservation v. EPA*, 124 S. Ct. 983, 1002 n.13 (2004)) (internal quotation marks omitted). Hence, claims "paid by" the government suffice for subsection (a)(2) liability, whether approved by it or not.

But, the court counters, the payment to the defendants was not a payment "by the Government" since Amtrak — a government grantee rather than the government itself — wrote the check. The implications of the court's argument are breathtaking, because they do more than just impose a requirement of re-presentment. If payment "by the government" means that the government itself must write the check, then fraud on grantees who pay their own contractors is not covered by the False Claims Act regardless of whether claims are re-presented to a government employee.

The statutory language requires no such result. In common parlance,[5] the fact that expenses are "paid by" an entity does not mean that the entity paid them directly. When a student says that his college living expenses are "paid by" his parents, he typically does not mean that his parents send checks directly to his creditors. Rather, he means that his parents are the ultimate source of the funds he uses to pay those expenses. *See* United States Suppl. Br. at 12-13 (arguing that "a claim is 'paid by the Government' either if the government pays it directly or if the money is disbursed by a third-party funding recipient who receives from the government all or part of the funding for the payment"); *see also United States ex rel. Marcus v. Hess*, 317 U.S. 537, 544-45 (1943) ("Government money is as truly expended whether by checks drawn against the Treasury to the ultimate recipient

[5] *See Walters v. Metropolitan Educ. Enters., Inc.*, 519 U.S. 202, 207 (1997) ("In the absence of an indication to the contrary, words in a statute are assumed to bear their ordinary, contemporary, common meaning.") (internal quotation marks omitted).

or by grants in aid . . . .").[6]

This interpretation of "paid by the Government" — as requiring that the government be either the direct or indirect source of the funds — is confirmed by § 3729(c), which defines the word "claim." As discussed in Part III, § 3729(c) provides that a request for money made to a grantee is a "claim" under the FCA "if the United States Government provides any portion of the money or property . . ., or if the Government will reimburse such . . . grantee, or other recipient for any portion of the money or property." 31 U.S.C. § 3729(c). This interpretation is also supported by the legislative history of the 1986 Amendments which, as discussed in Part IV, stresses that a "false claim is actionable although the claims or false statements were made to a party other than the Government, *if the payment thereon would ultimately result in a loss to the United States.*" S. Rep. No. 99-345, at 10 (emphasis added); *see* H.R. Rep. No. 99-660, at 21 (1986).

The court protests that this reading of "paid by the Government" has a "fatal flaw: it yields exactly the same meaning that would result if Section 3729(a)(2) did not contain the words 'by the Government' at all." Op. at 16. Not so. Those words make clear that, for liability to attach, the government must have been the source of the funds either directly or indirectly; that is, the fraud must ultimately result in a loss to the government. Indeed, without those words,

---

[6] In the related context of 18 U.S.C. § 641, which criminalizes embezzlement of "money or thing[s] of value of the United States," courts have held that "federal grant money does not lose its federal character simply because it is administered by a nonfederal agency." *United States v. Largo*, 775 F.2d 1099, 1102 n.3 (10th Cir. 1985); *see, e.g., United States v. Long,* 996 F.2d 731 (5th Cir. 1993) (holding that a university's funds, received from a state agency but originating in the federal treasury, retained their federal character for purposes of § 641); *United States v. Foulks,* 905 F.2d 928 (6th Cir. 1990) (finding that grant funds in the possession of the Toledo Salvation Army constituted funds of the United States); *United States v. Scott*, 784 F.2d 787, 790-91 (7th Cir. 1986) (concluding that theft of funds from a local government agency, which was primarily funded by the federal government, appropriately triggered § 641).

the subsection could be read to make liable any person who "knowingly makes . . . a false statement . . . to get a false or fraudulent claim paid" by *anyone*.

Finally, if subsection (a)(2) does contain an implicit present-ment requirement as my colleagues suggest, one is entitled to ask whether their reading doesn't have the "fatal flaw" they ascribe to mine: it allows subsection (a)(1) "to swallow" (a)(2), leaving the latter with no (or very little) independent mean-ing. Op. at 21. My colleagues wait until virtually the last page of their opinion to say what they think subsection (a)(2) means: "[I]t seems clear," they say, "that (a)(2) is . . . designed to prevent those who make false records or state-ments to get claims paid or approved from escaping liability solely on the ground that they did not *themselves* present a claim for payment or approval." *Id.* (citing *United States ex rel. Harris v. Bernad*, 275 F. Supp. 2d 1, 6 (D.D.C. 2003), citing, in turn, John T. Boese, Civil False Claims & Qui Tam Actions § 2.01[B], at 2-22 (2d ed. Supp. 2004-1)). But since this reading still implies that *someone* must have presented the claim for liability to attach under subsection (a)(2), it does not appear to differ from liability under (a)(1) — or subsec-tion (a)(3) for that matter — which itself ensures that one cannot avoid liability for false claims that he causes but does not himself present. 31 U.S.C. § 3729(a)(1) (making liable anyone who knowingly presents, "or causes to be presented" a false claim); *see id.* § 3729(a)(3) (same for anyone who "conspires to defraud the Government by getting" a false claim paid).[7] The court's restrictive reading is neither clear from the statutory text nor supported by anything more than district court dicta, which in turn is supported by nothing more than a statement in a practitioner's guide, which itself contains no explanation for the conclusion that it draws. *See Bernad*, 275 F. Supp. 2d at 6 (citing Boese § 2.01[B], at 2-22).

---

[7] Indeed, the authority cited by the court acknowledges that under this reading, "many violations of [(a)(2)] may also be consid-ered violations of Section (a)(1) under the 'causes to be presented' language," and the "distinctions between the two sections may be even smaller than they first seem." Boese § 2.01[B], at 2-22.

B

Without support in the statutory text, the court retreats into legislative history — an ironic choice, given the court's protestations in the early pages of its opinion. But the retreat is to no avail.

First, noting that the phrase "by the Government" was added in 1986, the court concludes that it must have added something new to the statute's previous meaning. "The intended effect of adding 'by the Government,'" the court says, "is fairly obvious: Congress was referring back to the presentment requirement of Section 3729(a)(1)." Op. at 17. But that divination of congressional intent is not obvious at all. "Paid by the Government" is not a phrase that brings "presented to the Government" to mind, and there was no reason for Congress to employ different language to express the same concept. *See Russello*, 464 U.S. at 23. Nor does the legislative history support the court's view of congressional intent: not one word in the 1986 legislative history even mentions the addition of "by the Government," let alone reflects such an intent.[8]

Indeed, as discussed in Part IV, the legislative history suggests precisely the opposite. The same Congress that added "by the Government" also expansively defined the term "claim" to make clear that the FCA covers fraud on grantees, whether or not accompanied by presentment to the govern-

---

[8] As the preceding discussion makes clear, my colleagues are incorrect on two counts in saying that "[t]he dissent is unwilling to give the addition of 'by the Government' to (a)(2) any weight because it cannot find a statement in any committee report explaining what Congress intended to accomplish by the amendment." Op. at 17-18 n.6. First, I do give "by the Government" weight: it clarifies that the FCA only reaches false claims where the government directly or indirectly provides the funds and suffers the loss. Second, my argument does not rest on the absence of legislative history, but rather on the best interpretation of the language of § 3729(a)(2) and (c). The absence of legislative history merely (and completely) counters my colleagues' own suggestion that the legislative history supports their interpretation.

ment. It is difficult to believe that this Congress, after proclaiming its purpose to reach fraud regardless of presentment, then subverted that purpose using words that do not mention presentment at all. Accordingly, rather than add something new to the FCA, the better explanation is that those words were intended to *clarify* what the Supreme Court had long held: that the FCA reaches only those false claims that ultimately result in losses to the United States. *See United States v. Neifert-White Co.*, 390 U.S. 228, 232 (1968); *Marcus*, 317 U.S. at 544-45. Indeed, that reading is in keeping with the overall purpose of the 1986 Amendments, which was to "*clarif[y]* that the statute permits the Government to sue under the False Claims Act for frauds perpetrated on Federal grantees, including States and other recipients of federal funds." S. Rep. No. 99-345, at 21 (emphasis added).

Next, the court retreats even deeper into legislative history, tracing the FCA's language and structure all the way back to 1863. As the court notes, from 1863 through 1982, the liability provisions of the FCA were contained in a single, "interminable" sentence codified at 31 U.S.C. § 231. Op. at 18-19. That sentence (with clause numbers inserted for ease of reference) made liable any person:

> *who* [1] shall make or cause to be made, or present or cause to be presented, for payment or approval, to or by any person or officer in the civil, military, or naval service of the United States, any claim upon or against the Government of the United States, . . . knowing such claim to be false, fictitious, or fraudulent, *or who*, [2] for the purpose of obtaining or aiding to obtain the payment or approval of such claim, makes, uses, or causes to be made or used, any false bill, receipt, voucher, roll, account, claim, certificate, affidavit, or deposition, knowing the same to contain any fraudulent or fictitious statement or entry, *or who* [3] enters into any agreement, combination, or conspiracy to defraud the Government of the United States, . . . by obtaining or aiding to obtain the payment or allowance of any false or fraudulent claim, *or*

> *who*, [4] having charge, possession, custody, or control of any money or other public property . . ., with intent to defraud the United States . . . delivers . . . any amount of such money or property less than that for which he received a certificate or took a receipt, *and every person who* . . . .

31 U.S.C. § 231 (1976) (emphasis added). Contrary to the court's characterization, Op. at 19, I do not disagree that Congress intended no substantive change when, in 1982, it divided this sentence into the numbered subsections of 31 U.S.C. § 3729(a). *See* Pub. L. No. 97-258, § 1, 96 Stat. 978 (Sept. 13, 1982); H.R. Rep. No. 97-651, at 1 (1982). But I do disagree with the conclusion the court draws from that fact, since in my view the second clause of the pre-1982 FCA did not contain a presentment requirement.

The first clause of the "interminable" sentence is the precursor to § 3729(a)(1) and contains the now-familiar presentment language. The conclusion that my colleagues draw from this is that § 3729(a)(2) — whose precursor is the second clause of the sentence, which unlike the first contains no reference to presentment — can "only be read in conjunction with" the earlier presentment clause. Op. at 19. But if, as my colleagues apparently intend, "in conjunction with" means "to incorporate," this reading makes sense only if the clauses of the pre-1982 version of the FCA were intended to largely duplicate each other. And they were not.

The multiple clauses of the pre-1982 version were not intended to repeatedly restate the same concept in different words, but rather to encompass the various ways by which a person could fraudulently obtain government funds.[9] As the

---

[9] The court is thus wrong to say that my interpretation "embrace[s] a reading of (a)(2) that would render the plain language of (a)(1) largely meaningless." Op. at 15; *see id.* at 20. Moreover, as the government suggests, "there may be acts that fall within the scope of subsection (a)(1), but do not fall within the scope of subsection (a)(2)" in light of the fact that (a)(1) proscribes "false or fraudulent claim[s]," 31 U.S.C. § 3729(a)(1), while (a)(2) deals with

Supreme Court put it, "the Act was intended to reach all types of fraud, without qualification, that might result in financial loss to the Government." *Neifert-White*, 390 U.S. at 961. This view is supported by the sentence's multiple uses of the disjunctive "or," which indicate that subsection (a)(2) should be read in "disjunction" rather than "conjunction" with subsection (a)(1), and by the "rule against superfluities" cited by the court, Op. at 17, which bars a reading that would have one of several distinct clauses do all the necessary work. *See Hibbs v. Winn*, 124 S. Ct. 2276, 2286 (2004); *Duncan v. Walker*, 533 U.S. 167, 174 (2001).

To support its novel incorporation theory, the court contends that the reference to "such claim" in subsection (a)(2)'s precursor clause[10] "was a shorthand reference to the claim already identified in the current subsection (a)(1) — that is, a claim that would be presented or caused to be presented to the United States." Op. at 19. But, the pre-1982 version of the FCA does not use the court's syntax: "a claim that would be presented." To the contrary, rather than use the word "presents" as a way to *describe* a claim, the pre-1982 statute uses it to describe something *done to* a particular kind of claim. And what kind of claim? The answer is: a false "claim upon or against the Government of the United States" in the precursor to subsection (a)(1),[11] and a "false or fraudu-

---

certain "false record[s] or statement[s]," *id.* § 3729(a)(2). United States Suppl. Br. at 6.

[10] *See* 31 U.S.C. § 231, cl. 2 (1976) (making liable any person "who, for the purpose of obtaining . . . payment or approval of *such claim*, makes . . . any false bill, receipt, voucher, roll, account, claim, certificate, affidavit, or deposition, knowing the same to contain any fraudulent or fictitious statement or entry") (emphasis added).

[11] *See* 31 U.S.C. § 231 (1976) ("Any person . . . who [1] shall make or cause to be made, or present or cause to be presented, for payment or approval, to or by any person or officer in the civil, military, or naval service of the United States, *any claim upon or against the Government of the United States*, . . . knowing such claim to be false, fictitious, or fraudulent, or who, [2] for the

lent claim" in the current version.[12] Those are the phrases that are the logical referents for "such claim," and neither contains a reference to presentment.[13]

It is also important to remember that the history of the False Claims Act did not end in 1982. Whatever meaning "such claim" had prior to 1982, and whatever Congress intended by eliminating "such" in that year, the new definition of "claim" in the 1986 Amendments eliminates any reason a reader of subsection (a)(2) might have to refer to subsection (a)(1) to understand the meaning of the term. And that definition contains no reference to presentment. *See* 31 U.S.C. § 3729(c). In short, whatever comfort the court derives from the pre-1982 history of the FCA grows cold after 1986. *See Lamie*, 124 S. Ct. at 1030 ("The starting point in discerning congressional intent is the existing statutory text, and not the predecessor statutes.") (internal citation omitted).

Finally, the court relies on "scholarly commentary" to support the "proposition that subsection (a)(2) harkens back to (a)(1), and that the latter requires presentment." Op. at 20

---

purpose of obtaining or aiding to obtain the payment or approval of *such claim*, makes, uses, or causes to be made or used, any false bill . . . .") (emphasis added).

[12] *See* 31 U.S.C. § 3729(a)(1) (making liable any person who "knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . *a false or fraudulent claim* for payment or approval") (emphasis added).

[13] Nor is the court correct in saying that "legislative history . . . explains why the word 'such' disappeared from the statute," Op. at 19 — at least not in any way helpful to the court's interpretation. The single sentence that the court relies on merely says: " 'The word "such" is [no longer] used as a demonstrative adjective.' " *Id.* (quoting H.R. Rep. No. 97-651, at 3). That is description, not "explanation." Indeed, if anything, it is a description that supports the reading argued for in the above paragraph. After 1982, subsection (a)(2) no longer modified "claim" with "such" as in its precursor clause, and instead substituted the specific adjectival phrase that Congress had intended: "a false or fraudulent" claim. 31 U.S.C. § 3729(a)(2).

(citing BOESE § 2.01[B], at 2-21). But the "practitioner's" guide, BOESE at i, that the court cites adds nothing to its argument. While the guide does include the phrase, "a claim [must] be presented to the United States," in a list of the elements of subsection (a)(2), *see id.* at 2-21, it does not cite a single case or offer a single argument in support of that proposition. The court's opinion must stand or fall on its own.

## III

To this point, the analysis has principally proceeded by examining § 3729(a) in isolation. But "words of a statute must be read in their context and with a view to their place in the overall statutory scheme," *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (quotation marks omitted), and here that context includes consideration of § 3729(c). In 1986, Congress amended the FCA by adding that subsection, which contained a new and comprehensive definition of the word "claim":

> For purposes of this section, "claim" includes any request or demand . . . for money or property *which is made to a contractor, grantee, or other recipient* **if** the United States Government provides any portion of the money or property which is requested or demanded, **or if** the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded.

31 U.S.C. § 3729(c) (italics and bolding added).

This definition plainly reaches not only those cases in which the grantee pays out money and then gets reimbursed by the government (the second "if" clause), but also those where "the United States Government provides any portion of the money" requested (the first "if" clause). The definition does require that a request or demand be made to the grantee, but does not mention re-presentment to the government. Indeed, such a re-presentment requirement is counter-intuitive with respect to the cases covered by the first "if" clause. Unlike the case in which a grantee advances its own funds

and then seeks federal reimbursement, when the government provides the grantee with federal funds and the grantee then disburses them upon receipt of a contractor's bill, it is unlikely that the grantee would have any reason to re-present that bill to the United States. Accordingly, the government contends that a re-presentment requirement would "render[ ] the first 'if' clause meaningless," United States Br. at 13, contravening the "rule against superfluities," *see* Op. at 17.

In response, the court accuses the government of "rhetorical sleight of hand" by equating "the present-tense 'provides' in the statute with the past-tense 'has provided' in the argument." *Id.* at 7. I disagree. In common parlance, it does not change the tense of "provides" to say that the government "provides" Amtrak with the funds it uses to pay contractors who later submit claims to Amtrak. Indeed, the court might be charged with some tense-shifting of its own, effectively transforming "provides" into the future tense by reading the first "if" clause as attaching liability only: "if the Government *provides* the funds to the grantee *upon presentment of a claim* to the Government." *Id.* (emphasis in original). Since in the real world these events do not transpire simultaneously, the court's contention that liability attaches only if the government provides the funds to the grantee "*upon* presentment of a claim" must mean "*after* presentment of a claim," thus effectively transforming "provides" into the future-tense "will provide." Such a transformation is particularly suspect in the context of § 3729(c), since its second "if" clause shows that Congress knew how to use that verb form when it wanted to. *See* 31 U.S.C. § 3729(c) ("if the Government *will* reimburse such contractor . . .") (emphasis added).

The primary problem with the court's theory is not tense transformation, however, but the insertion of extra words into the statute. Subsection (c)'s first "if" clause does not state, as the court does, that "False Claims Act liability will attach if the Government provides the funds to the grantee *upon presentment of a claim to the Government*." Op. at 7 (emphasis added). Rather, it simply defines claim as a "request or demand . . . to a contractor, grantee, or other recipient" —

the phrase "presentment of a claim to the Government" is not to be found. And as the old canon says, "we ordinarily resist reading words or elements into a statute that do not appear on its face." *Bates v. United States*, 522 U.S. 23, 29 (1997); *see Lamie*, 124 S. Ct. at 1032. Or, as the Supreme Court put it more pithily in *United States v. Naftalin*: "The short answer is that Congress did not write the statute that way." 441 U.S. 768, 773 (1979).

## IV

I now turn to the legislative history of the 1986 Amendments. Although the court fires off an array of canons to preclude such inquiry, all refer to situations in which the statutory text is plain and unambiguous.[14] But, as is readily apparent, neither § 3729(a)(2) nor § 3729(c) mentions the word "presentment" in any of its variations. And whatever one may think of the arguments that can be made from the actual text, no one can say the False Claims Act "unambiguously" imposes a presentment requirement for liability under subsection (a)(2). Counsel for Bombardier rightly conceded as much at oral argument. Oral Arg. Tr. at 29-30. Accordingly, reference to the legislative history is appropriate. *See Blum v. Stenson*, 465 U.S. 886, 896 (1984).

Once the legislative history is consulted, any residual uncertainty about whether to read a presentment requirement into the statute disappears. As this court recognized in *Yesudian*, the purpose of the new definition of "claim" added in 1986 was to " 'clarif[y] that the statute permits the Government to sue under the False Claims Act for frauds perpetrated on Federal grantees, including States and other recipients

---

[14] *See* Op. at 8-9 (citing *Lamie*, 124 S. Ct. at 1030 ("[W]hen the statute's language is plain, the sole function of the courts . . . is to enforce it according to its terms.") (internal quotation marks omitted); *Ratzlaf v. United States*, 510 U.S. 135, 147-48 (1994) (stating that courts should "not resort to legislative history to cloud a statutory text that is clear"); *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 808 n.3 (1989) ("Legislative history is irrelevant to the interpretation of an unambiguous statute.")).

of federal funds.'" 153 F.3d at 737 (quoting S. Rep. No. 99-345, at 21). The Senate Judiciary Committee stressed that it did not matter whether the claim was made to a government employee or to a grantee. "*[A] false claim is actionable*," the Committee said, "*although the claims or false statements were made to a party other than the Government*, if the payment thereon would ultimately result in a loss to the United States." S. Rep. No. 99-345, at 10 (emphasis added). And the House Judiciary Committee agreed: "*[C]laims or false statements made to a party other than the Government are covered* by this term if payment thereon would ultimately result in a loss to the United States." H.R. Rep. No. 99-660, at 21 (emphasis added).

Moreover, the "Senate Judiciary Committee indicated that the new subsection was inserted in response to earlier court holdings that 'a fraud against the grantee does not constitute a fraud against the Government of the United States' where 'once the United States has made the grant to the State . . . or other institution, it substantially relinquishes all control over the disposition of the money.'" *Yesudian*, 153 F.3d at 737 (quoting S. Rep. No. 99-345, at 21). The example cited by the Committee was *Salzman v. Salant & Salant, Inc.*, 41 F. Supp. 196 (S.D.N.Y. 1938), in which a district court dismissed a complaint that alleged the defendant had submitted false claims for payment to the Red Cross, because the Red Cross — although a recipient of federal funds — was neither the government nor a department thereof. S. Rep. No. 99-345, at 21. At the same time, the Committee approvingly cited cases akin to this one, where courts had held that "a false claim to the recipient of a grant from the United States . . . is a false claim to the United States." *Id.* at 10 (citing *United States ex rel. Davis v. Long's Drugs*, 411 F. Supp. 1144 (S.D. Cal. 1976)). Thus, to read the False Claims Act as requiring presentment to the government "would leave intact those court opinions Congress seemingly intended to overrule," while overturning those that Congress cited with approval. *Yesudian*, 153 F.3d at 738.

The court does not, and cannot, dispute that requiring presentment leaves intact "some" of the opinions that Con-

gress intended to overrule.[15]  Yet, it contents itself with the fact that requiring presentment does not leave intact one of the cases that Congress cited with disapproval, *United States v. Azzarelli Construction Co.*, 647 F.2d 757 (7th Cir. 1981). Op. at 10.  But while it is true that imposing a presentment requirement does not interfere with the overruling of *Azzarelli*, that is only because *Azzarelli* was a case that Congress wanted to overrule for a different reason:  it had held that the FCA did not apply to grantees "where the Federal contribution is a fixed sum."  S. Rep. No. 99-345, at 15.  The fact that the court's interpretation can be squared with Congress' intentions regarding that single case does not square its interpretation with the legislative history of the 1986 Amendments.

Taking another tack, the court dismisses the import of the 1986 legislative history altogether, noting that the Senate Report was based on a version of the bill that did not yet include the provision that added the words "by the Government" to subsection (a)(2).  *See* Op. at 20.  As discussed in Part II, however, those words do not impose a requirement of *presentment* to the government.  Nor is there any legislative history that suggests they do.  Indeed, the history is entirely silent as to why the words were added, and it is simply not plausible that Congress, which had expressed its intent to clarify that the FCA covers false claims to grantees, reversed itself without so much as a whisper.  As the Supreme Court said in rejecting an analogous contention that Congress had repealed municipal liability in the 1986 Amendments, "it is simply not plausible that Congress intended" to make such a change "*sub silentio* by the very Act it passed to strengthen the Government's hand in fighting false claims."  *Cook County, Illinois v. United States ex rel. Chandler*, 538 U.S. 119, 133-34 (2003).

Nor can my colleagues' dismissal of the clear legislative history find support in the arms of the inestimable Judge Friendly.  Op. at 10 (citing Henry J. Friendly, Benchmarks

---

[15] *See* Op. at 10 (conceding that "*Totten* and the United States may be on firmer ground with respect to some of the . . . cases with which the Committee expressed displeasure").

216 (1967)). In fact, the canon of construction propounded by the good judge supports the opposing view:

> [I]f an intent clearly expressed in committee reports is within the permissible limits of the language and no construction manifestly more reasonable suggests itself, a court does pretty well to read the statute to mean what the few legislators having the greatest concern with it said it meant to them.

FRIENDLY, at 216. In this case, the intent expressed in the committee reports is well within the permissible limits of the language, and there is no construction that is more reasonable. Accordingly, in Judge Friendly's view, this court would do "pretty well to read the statute to mean" what Congress said it meant. *Id.*

## V

Finally, the court falls back on policy considerations to support its presentment requirement. Op. at 11-13. The court's arguments are flawed on their own terms. More important, the policies on which the court relies are not those of the Congress of the United States.

The court's policy analysis begins with the contention that an "interpretation that would advance the statute's general purposes to a greater extent" should not "always prevail over one that would both advance the same ends — though to a slightly lesser extent — and have fewer drawbacks." Op. at 11. This is fine as canons go, but only if *Congress* has indicated that it would be satisfied if its ends were advanced to "a slightly lesser extent" than the face of the statute suggests. And only if the court's idea of a "drawback" is the same as the legislature's.[16] But those caveats are not satis-

---

[16] *See Lamie*, 124 S. Ct. at 132 ("Our unwillingness to soften the import of Congress' chosen words even if we believe the words lead to a harsh outcome is longstanding."); FRIENDLY, at 203 ("[A] court will 'do well to stick close to the text and not import argumentative qualifications from broad, unexpressed claims of policy.' " (quoting *Utah Junk Co. v. Porter*, 328 U.S. 39, 44 (1946))).

fied here, where the statutory language includes no present-ment requirement and the legislative history makes clear that Congress did not want one.

Next, the court identifies several "complications" that could flow from permitting recovery where there is fraud on a grantee, but no presentment to the government. Op. at 12. The first such complication is that "extending False Claims Act liability here seems to result in quadruple liability for false claimants: a grantee could presumably bring suit and obtain a recovery for itself, in addition to the treble damages the Government and the relator divvy up under the Act." *Id.* But the premise of this argument is dubious. The FCA permits recovery only on behalf of the government, and only for "damages which the Government sustains." 31 U.S.C. § 3729(a).[17] For the grantee also to bring suit successfully, it would have to rely on some other source of law. And it is pure speculation that such an unnamed (perhaps state common law) cause of action would permit a grantee duplicative recovery, rather than require allocation among the injured parties according to their injuries. Moreover, even if state law did permit such recovery, a mechanical presentment requirement would not obviate the court's concern.

The other main complication identified by the court is that, without a presentment requirement, "the potential reach of the Act" is "almost boundless," potentially stretching to "any false claim made to any college or university, so long as the institution has received some federal grants." Op. at 13.[18]

---

[17] In addition to trebling the amount of the government's damages, the Act provides for the recovery of an additional amount, not less than $5,500 and not more than $11,000. *See* 31 U.S.C. § 3729(a); *see also* Federal Civil Penalties Inflation Adjustment Act of 1990, Pub. L. No. 101-410, § 5, 104 Stat. 891 (Oct. 5, 1990); 28 C.F.R. § 85.3(a)(9).

[18] The third asserted complication, that it would be "unclear how to apply the 'knowingly presents' element," if there were no "requirement of presentment to the Government," Op. at 12-13, may be relevant with respect to subsection (a)(1), but has no relevance to subsection (a)(2). As previously noted, the latter does not contain

This argument also fails. As noted, the FCA limits damages to those "which the Government sustains." 31 U.S.C. § 3729(a). Although determining whether the government has been damaged by fraud on a grantee may be difficult in some cases, in others it will not. Here, for example, the plaintiff alleges that the money was "paid out of [Amtrak's] capital budget which consists entirely of money[ ] received from the United States Government, that was specifically designated for capital expenditures." Dillon Decl. ¶ 5; *see id.* ¶ 7. As the government describes the current state of the record, "it is the United States that provided much, if not all, of the funding for the projects with respect to which the alleged fraud here was committed, and it is the United States Government that will bear much, if not all, of any ensuing losses." United States Suppl. Br. at 11. Moreover, if traceability is a problem, it is a problem borne by the plaintiff, who must prove that the claim was "paid . . . by the Government" in order to establish liability under § 3729(a)(2), and who must demonstrate the extent of the United States' losses in order to recover treble damages under § 3729(a).

In any event, there is no evidence that Congress shares the policy concerns identified by the court. To the contrary, far from worrying that the False Claims Act might extend too far in covering fraud on grantees, Congress insisted that "a false claim to the recipient of a grant from the United States or to a State under a program financed in part by the United States, is a false claim to the United States." S. Rep. No. 99-345, at 10. And it sought to ensure that "a false claim is actionable although the claims or false statements were made to a party other than the Government, if the payment thereon would ultimately result in a loss to the United States." *Id.*

The Supreme Court has long recognized the breadth of Congress' concern in enacting the FCA, noting that "Congress wrote expansively, meaning 'to reach all types of fraud, without qualification, that might result in financial loss to the Government.'" *Cook County,* 538 U.S. at 129 (quoting *Nei-*

---

the "knowingly presents" language that causes the complication. *Compare* 31 U.S.C. § 3729(a)(1), *with id.* § 3729(a)(2).

*fert-White*, 390 U.S. at 232). As a consequence, "[i]n the various contexts in which questions of the proper construction of the Act have been presented, the Court has consistently refused to accept a rigid, restrictive reading, even at the time when the statute imposed criminal sanctions as well as civil." *Neifert-White*, 390 U.S. at 232. And, in language that is a particularly apt rejoinder to the contention that a representation requirement is needed to rein in the Act's potential reach, the Court has emphasized that federal funds granted to third parties "are as much in need of protection from fraudulent claims as any other federal money, and *the statute does not make the extent of their safeguard dependent upon the bookkeeping devices used for their distribution*." *Marcus*, 317 U.S. at 544 (emphasis added).

Indeed, if there are policy concerns that should be taken into account in choosing between possible interpretations of the FCA, they are the ones outlined in the preceding two paragraphs, because they are the ones that Congress itself expressed. And measured by those concerns, it is the interpretation that the court adopts today that should give us pause. The consequence of today's ruling is a dramatic cutback in the federal government's ability to protect itself against false claims on federal grant money. Where a grantee receives federal money in advance and then pays its contractors directly — without the federal government micromanaging the program by insisting on receiving and approving every invoice before payment — the FCA will no longer provide an avenue to recover for false claims. And as this case makes clear, the court's ruling applies even to an entity like Amtrak: a "publicly-funded operation," H.R. Rep. No. 105-251, at 21 (1997), that receives almost $1 billion dollars in federal grant money annually, *see* 49 U.S.C. § 24104(a),[19] and

---

[19] *See also* S. Rep. No. 105-85, at 2 (1997) ("Since 1971, . . . Amtrak has received more than $20 billion in Federal funding."); *Lebron v. National R.R. Passenger Corp.*, 513 U.S. 374, 385 (1995) (noting that Congress subsidizes "Amtrak's perennial losses").

that paid the defendants in this case out of federal funds that were specifically provided for the contract at issue, *see* Am. Compl. ¶ 43; Dillon Decl. ¶ 5. The removal of the protection of the False Claims Act in these circumstances is far more than a mere "complication."

## VI

The United States charges that the interpretation the court adopts today will "significantly restrict[ ] the reach of the False Claims Act in a manner than Congress did not intend, withdrawing False Claims Act protection with respect to a broad swath of false claims inflicting injury on the federal fisc." United States Br. at 9. The United States is right. If that interpretation were required by the statutory language, we would of course be required to adopt it nonetheless. But the court's interpretation is neither compelled by nor consistent with the language of 31 U.S.C. § 3729(a)(2) and (c). I therefore respectfully dissent.